THE ST. LUKE HOSPITALS, INC., Appellant,

·v.

Hon. Leonard L. KOPOWSKI, Campbell Circuit Court Judge, Appellee,

and

Meranda Short, Steven M. Delph, and Naomi Short, Administratrix of the Estate of Dylan Michael Delph–Short and Women's Healthcare of No. Kentucky, P.S.C., Jeffrey D. Gochoel, M.D., Thomas Stine, M.D., and Northern Kentucky Pediatric Group, P.S.C., Real Parties in Interest,

and

Kentucky Hospital Association, Inc., Amicus Curiae.

No. 2004–SC–000413–MR.

Supreme Court of·Kentucky.

April 21, 2005.

Scott M. Powers, Lange, Quill & Powers, PLC, Newport, Counsel for Appellant.

Leonard Kopowski, Judge, Campbell Circuit Court, Newport, Counsel for Appellee.

Robert E. Sanders, Delana S. Pierce, Sanders Tismo & Associates PSC, Covington, Counsel for Real Parties in Interest, Meranda Short, Steven M. Delph, and Naomi Short.

Gerald R. Toner, O'Bryan, Brown & Toner, Louisville, Counsel for Real Parties in Interest, Women's Healthcare and Jeffrey D. Gochoel, M.D.

Mark G. Arnzen, Michelle M. Keller, Covington, Counsel for Real Parties in Interest, Northern Kentucky Pediatric Group, P.S.C., and Thomas Stine, M.D.

Cathleen C. Palmer, O'Bryan, Brown & Toner, Louisville, Counsel for Amicus Curiae, Kentucky Hospital Association.

Opinion of the Court by Chief Justice LAMBERT.

This is a matter of right appeal from an original action in the Court of Appeals. In that action, St. Luke Hospital sought and was denied a writ of prohibition from an order of the trial court mandating St. Luke to produce what it claims are documents covered by the attorney-client privilege. The trial court's order recognized that the writings are privileged, but ordered that recorded facts related to the underlying litigation be turned over to the plaintiff because those facts could not be obtained by other means. In its language, the "inability to obtain the facts ... over-rides any

claimed privilege." The Court of Appeals denied a writ of prohibition. We reverse because the attorney-client privilege is not overridden by need of an opposing party to obtain information not otherwise available but for breach of the privilege.

## I. Facts

This appeal from denial of a writ of prohibition[1] originated from a decision of the Campbell Circuit Court that ordered St. Luke Hospital to disclose factual information contained in a writing created at the request of the hospital's attorney. The underlying claim is based on medical negligence following the death of a newborn infant in October of 2000. Shortly after the infant's death the officer in charge of risk management for the hospital contacted the hospital's attorney, Scott Powers. At Powers' request the risk manager conducted an interview with the three nurses involved in the post-delivery care of the newborn, and each of their statements were reduced to separate writings. Each writing was signed by the nurse and then sent to the hospital's legal counsel, where it presumably remains today.

At their depositions, one of the nurses produced her statement to the plaintiff, and that statement is not a subject of this appeal. But the remaining two nurses declined to produce their statements, each claiming that it was protected by the attorney-client privilege.[2] The plaintiff moved for the production of these writings because the nurses could not remember the facts surrounding the infant's death. As noted above, the trial court ruled in favor of the plaintiff and held that even though the writings were protected by the attor-

ney-client privilege, the hospital's privilege was overridden because of the "plaintiff's inability to obtain the facts contained within the statements through any other means." The trial court did note, however, that the hospital could redact the portions of the statement that revealed mental impressions and legal advice. In declining the writ, the Court of Appeals stated that the hospital must turn over the facts contained in the writing "without deciding whether the trial court erred in its determination" that the writing is covered by the privilege.

## II. Writ of Prohibition

Before discussing the merits of the case before us, we pause to note the consequence of the procedural posture. At its foundation, this appeal seeks review of the denial of a writ of prohibition,[3] a matter governed by a different legal standard than an appeal in the normal course of practice. This Court recently stated in *Fritsch v. Caudill* that a party must pass the threshold showing of a lack of an adequate remedy by appeal, and that it will suffer great and irreparable injury.[4] It is a fundamental maxim in this well-settled area of law that when a party seeks such extraordinary relief that courts carefully approach, and conservatively entertain, petitions for a CR 81 writ.[5]

In executing our cautious review to ensure that a party meets the required threshold of harm and lack of redressability on appeal, we take as true the movant's claim of error.[6] This is not to say, however, that error was committed. That is a question deferred to the next stage of

---

**1.** CR 76.36(7) allows an appeal as a matter of right from a judgment in any proceeding originating in the Court of Appeals.

**2.** KRE 503.

**3.** CR 76.36 and CR 81.

**4.** 146 S.W.3d 926, 928 (Ky.2004).

**5.** *Bender v. Eaton,* 343 S.W.2d 799, 801 (Ky. 1961).

**6.** *Fritsch,* 146 S.W.3d at 928.

analysis. This Court said it this way in *Bender v. Eaton,* "[t]his is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy."[7]

 Here, it is clear that St. Luke has met the required showing. We have previously held that extraordinary relief is warranted to prevent disclosure of privileged documents.[8] There is no adequate remedy on appeal because privileged information cannot be recalled once it has been disclosed.[9] St. Luke has met the first part of the *Bender* test.[10] The second part is whether the party will be greatly and irreparably injured as recognized in our precedents. Though our precedents indicate that St. Luke cannot prove a ruinous injury, we have held that such a showing is not absolutely required to obtain the writ of prohibition. However, when a high standard of harm is not met a writ will only be ordered in exceptional circumstances, *i.e.,* when failure to issue the writ would result in a substantial miscarriage of justice.[11]

 At stake here is the integrity of the attorney-client relationship. The protection from disclosure of privileged communications between an attorney and client is one of the foundation principles of Anglo–American jurisprudence. Where the privilege applies its breach undermines confidence in the judicial system and harms the administration of justice. A few of the potential detrimental consequences of declining to issue the writ sought here and allowing breach of the privilege are that clients may not feel comfortable in fully disclosing all pertinent facts—both favorable and unfavorable to their counsel; there would be a chilling affect on attorneys in their attempts to zealously seek out even the most damaging of facts; it would discourage persons or business entities from conducting comprehensive investigations if that could later cause legal liability; and would encourage attorneys to push a witness to admit lack of recollection to facilitate access to otherwise out-of-reach, privileged documents. This is not a result that comports with the interest of justice. Therefore, we hold that a party may obtain CR 81 relief, if entitlement is shown, when it is improperly ordered to divulge documents privileged by virtue of the attorney-client relationship.[12]

### III. The Privilege

 Upon our determination that St. Luke has met the threshold showing of lack of adequate remedy by appeal and great and irreparable harm, we turn our consideration to whether the attorney-client privilege applies under the facts presented here. Despite the historic and modern sanctity of the attorney-client privilege, not all communications between an attorney and a client are privileged, and the burden is on the party claiming the privilege to prove that it exists as to the communications so claimed.[13] The privilege is codified in KRE 503. Both the trial court and the appellate court concluded that the communications at issue in this case were protected by the privilege, but held that the privilege had been overcome

7. *Bender,* 343 S.W.2d at 801.

8. *See McMurry v. Eckert,* 833 S.W.2d 828 (Ky. 1992); *see also Bender,* 343 S.W.2d 799.

9. *E.g., Wal–Mart Stores, Inc. v. Dickinson,* 29 S.W.3d 796, 800–01 (Ky.2000).

10. 343 S.W.2d at 801.

11. *Id.* at 801–02.

12. KRE 503.

13. *See Haney v. Yates,* 40 S.W.3d 352, 355 (Ky.2001) *citing Sisters of Charity Health Sys. v. Raikes,* 984 S.W.2d 464, 469 (Ky.1998).

by the need for the information contained in the communications and the lack of an available alternative for obtaining the information. Therefore, the first issue is whether the attorney-client privilege covers the communications sought to be protected by the hospital. Despite the trial court's and Court of Appeals' holdings that the privilege applies, Appellees', real parties in interest, insist otherwise.

At issue to the applicability of the privilege is whether the attorney-client privilege protects the nurses' communications about the death of a patient to the hospital's officer in charge of risk management acting at the direction of the hospital's attorney. The attorney-client privilege attaches to a confidential communication "made to facilitate the client in his/her legal dilemma and made between two of the four parties listed in [KRE 503]; the client, the client's representatives, the lawyer, or the lawyer's representatives." [14] Furthermore, KRE 503(a)(5) states that "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."

The communications at issue in this case were made by two nurses about the post-delivery care of an infant who died at the hospital. These communications were made to the officer in charge of risk management, who had conducted the interviews of the nurses at the direction of the hospital's attorney. This is the type of

communication that we have held protected by the privilege in *Lexington Public Library v. Clark,* where we stated that KRE 503(b)(4) does not require the questioning to be done by the attorney.[15] In *Clark* the communications were made to Susan Brothers, the library's assistant director for training and human resources. Therein, we stated

> each communication made to Brothers by another employee and forwarded to the library's attorney is treated the same as if the communication had been made directly by the employee to the attorney. If the communication would have been privileged if made to the attorney, it is no less privileged if made to Brothers who forwarded it to the attorney.[16]

In this case the privilege would have applied if the nurses' statements had been made directly to the hospital's attorney because they met the requirements of KRE 503. Namely, the communications were made between two of the parties described in KRE 503(b), made for the purpose of facilitating the rendition of professional legal services to the hospital, and intended to remain confidential from those to whom disclosure would not further the rendition of professional legal services. Thus, we agree with the trial court and Court of Appeals that the attorney-client privilege applies to the nurses' statements as identified herein above.

We now turn to the question of whether the privilege was overcome because the information sought could not be obtained from an alternative source. Ve-

---

**14.** *Haney,* 40 S.W.3d at 355. See also *Lexington Public Library v. Clark,* 90 S.W.3d 53, 59 (Ky.2002) for a discussion of Kentucky's rejection, pursuant to KRE 503, of the "control group" definition of "representative of the client" and the adoption of the federal standard wherein a communication made by an

employee acting within the scope of employment is also protected by the attorney-client privilege.

**15.** 90 S.W.3d at 59.

**16.** *Id.*

hemently, we answer that question in the negative, and hold that when a communication is protected by the attorney-client privilege it may not be overcome by a showing of need by an opposing party to obtain the information contained in the privileged communication. The circuit court and the Court of Appeals hold otherwise and seem to have applied the work-product doctrine codified in CR 26 to the attorney-client privilege.

 The attorney-client privilege and the work-product doctrine are different, differing in what each covers, when and how applied, and whether protected communications are absolutely protected as in the former but not in the latter.[17] In fact CR 26, which codifies the work-product doctrine, specifically exempts communications protected by the attorney-client privilege from its disclosure provisions. In short, attorney-client privileged communications do not fall within the ambit of CR 26, and are not discoverable even when the information is essential to the underlying case and cannot be obtained from another source.

KRE 503 specifically delineates the circumstances in which the privilege gives way to other considerations. Listed in KRE 503(d), the exceptions provisions, and clearly laid out is each instance when the privilege may be abrogated. Therefore, the rule itself articulates when the privilege, normally absolute, is overcome. Moreover, the enumerated exceptions indicate that the draftspersons of KRE 503 were well aware of how to create exceptions to the privilege. Notably, there is no mention of necessity or lack of available alternatives as exceptions to the attorney-client privilege.

We hold that the communications from the nurses to the St. Luke risk management officer at the behest of the hospital's attorney are protected by the attorney-client privilege and that the privilege is not overridden by necessity or lack of available alternative sources. Accordingly, we find that the Court of Appeals abused its discretion by denying the writ of prohibition and remand with instructions to grant the writ of prohibition.

COOPER, GRAVES, JOHNSTONE, KELLER, SCOTT, and WINTERSHEIMER, JJ., concur.

---

**17.** *C.f., Commonwealth v. Barroso,* 122 S.W.3d 554, 558 (2003).