**TRANSAMERICA LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Archie E. MOORE, et al., Defendants.**

**Civil Action No. 10–14–DCR.**

United States District Court,
E.D. Kentucky,
Frankfort Division.

June 17, 2011.

Markham R. Leventhal, Irma Reboso So-lares, Julianna Thomas McCabe, Richard A. Sharpstein, Jorden Burt LLP, Miami FL, Scott T. Dickens, Jennifer Metzger Stinnett, Fultz, Maddox, Hovious & Dickens, PLC, Louisville, KY, for Plaintiff.

David H. Abney, II, Abney & Magruder, Frankfort, KY, Robert R. Sparks, Ron Par-ry, Parry Deering Futscher & Sparks PSC, Covington, KY, for Defendants.

### ORDER

EDWARD B. ATKINS, United States Magistrate Judge.

This matter is before the undersigned on Defendants' Motion to Compel Discovery [R. 38]. Plaintiff has filed a Response [R. 50] and Defendants have filed a Reply [R. 51]. Having been fully briefed, this matter is ripe for consideration. For the reasons discussed below, Defendants' Motion to Compel [R. 38] shall be GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

In April 2010, Plaintiff Transamerica Life Insurance Company ("Transamerica") filed a declaratory judgment action to resolve an ongoing dispute between it and Defendants Nancy and Archie Moore (the "Moores")[1] over Transamerica's obligation to pay certain claims under a benefit policy purchased by the Moores [R. 1]. Defendants' Counterclaim alleges bad faith, fraud, civil conspiracy, and various other claims arising out of Plaintiff's 2006 reduction in benefits to its policy own-ers [R. 9]. The controversy centers around the meaning of the term "actual charges" as it relates to the charges incurred for medical services by Nancy Moore for her cancer treatments and other issues related to the billing and payment practices of claims [R. 1; R. 9].

On May 12, 2011, at the request of counsel, this matter came for a telephonic conference, during which counsel discussed various dis-covery requests in dispute [R. 35]. The par-ties failed to reach an agreement. Pursuant to Court Order [R. 35], Defendants filed a Motion to Compel [R. 38] requesting an or-der compelling production of six specific cate-gories of documents, discussed below in de-tail as they appear in the motion. In its Response, Plaintiff objects to Defendants' re-quests, arguing that the discovery sought attempts to invade privileged communica-tions and seeks burdensome and irrelevant discovery. [R. 50].

### II. DISCUSSION

#### 1. Jorden Burt Report & The Gwin Charts

Defendants seek production of the "Jorden Burt Report," identified on Plaintiff's privi-lege log, and the charts prepared by Stephen Gwin, also identified on Plaintiff's privilege log. Defendants argue that the report at issue is not covered by the law of privilege or the work product doctrine. Alternatively, Defendants claim that the Report and Charts are discoverable under the crime-fraud ex-ception or pursuant to waiver of privilege. For the reasons discussed below, Defendants' request will be denied because it seeks privi-leged communications.

---

1. Defendant Nancy Jane Moore passed away on January 24, 2011 [R. 26]. Archie Earl Moore and Donna Jane Moore, as Co–Executors of the Estate of Nancy Jane Moore, were substituted as a Defendant and Counterclaim Plaintiff in this action in place of Defendant, the late Nancy Moore [R. 28].

## A. Relevant Factual Background

Prior to 2006, Plaintiff paid unlimited benefits to insured covered by its supplemental insurance policies. In 2004, Plaintiff realized that insureds were submitting documents which indicated "list prices," rather than the actual amounts charged and paid, in support of "proof of loss" as required by the policy at issue. This resulted in the company overpaying 'actual charges,' as well as steep premium increases for policy holders. Plaintiff then created what is referred to as the "DSI Claims Taskforce," which included individuals from financial, actuarial, claims, and legal departments, to undertake a comprehensive review of its supplemental cancer policies.

In May 2004, Assistance General Counsel Mark Edwards consulted with several law firms regarding the litigation risks associated with potential revisions of the policy. [R. 50–1, *Edwards Declaration*]. In October 2004, foreseeing "a real likelihood of litigation from the actions being considered to correct the claims practices and procedures," Plaintiff retained the law firm of Jorden Burt to provide legal advice and litigation risk analysis about the prospective changes to the policy. [R. 50–1; R. 50–2, *Leventhal Declaration*].

In April 2005, Jorden Burt completed what is referred to by the parties as the "Jorden Burt Report." The Report, written entirely by Jorden Burt attorneys, allegedly contains legal research, litigation risk analysis, analysis of financial materials, and mental impressions of counsel related to the potential policy revisions. Additionally, it contains several charts, referred to by the parties as the "Gwin Charts," created by Plaintiff's in-house actuary Stephen Gwin in December 2004 at the request of Jorden Burt attorneys. [R. 50].

## B. Application of the Attorney–Client Privilege

■ The attorney-client privilege protects confidential communications between an attorney or his representative and his client or client's representative made for the pur-

pose of obtaining legal advice. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Static Control Components, Inc. v. Lexmark Int'l, Inc.,* 2007 WL 902273, *3 (E.D.Ky.2007) (internal citations omitted); *Reed v. Baxter,* 134 F.3d 351, 355–56 (6th Cir.1998). *See also St. Luke Hospitals, Inc. v. Kopowski,* 160 S.W.3d 771, 776 (Ky.2005) ("the attorney-client privilege attaches to a confidential communication made to facilitate the client in his/her legal dilemma"). Under Kentucky law, "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." *St. Luke Hospitals,* 160 S.W.3d at 776 (citing Kentucky Rule of Evidence 503(a)). Privileged communications "are not discoverable even when the information is essential to the underlying case and cannot be obtained from another source." *Id.* at 777.

■ The Jorden Burt Report and the Gwin Charts are protected by the attorney-client privilege. First, the report was commissioned by Plaintiff, "the client," from Jorden Burt LLC, "the lawyer." The purpose of the report was to provide legal advise regarding Transamerica's potential changes to its claims processing, as well as analyze the potential legal implications of those changes. The Gwin Charts, commissioned by the attorneys to aid in the creation of the report, were used for the same purposes as the Report—legal advice. These communications (the Report) were strictly confidential and between the attorneys and the client and its representatives. Accordingly, the communications at issue are protected by the attorney-client privilege and not discoverable unless waived or subject to an exception.[2]

## C. Waiver and the Crime Fraud Exception

■ Although Defendants argue otherwise, waiver is inapplicable. The Jorden

---

2. Plaintiff argues that these materials are also protective by the work-product doctrine. The Court will not address this because the documents are protected by the attorney-client privilege, regardless of whether they are also protected by the work-product doctrine.

Burt Report was limited to key management-level personnel. Each recipient signed a numbered copy of the Report and the Report has never been disseminated otherwise. The attorney-client protection is waived "by voluntary disclosure of private communications to third parties." *New Phoenix Sunrise Corp. v. C.I.R.*, 408 Fed.Appx. 908, 919 (6th Cir.2010) (internal citations omitted). There is no indication that Transamerica waived privilege by disclosing the private communications at issue.

■ The privilege is *implicitly* waived if the party "affirmatively uses privileged communications to defend itself or attack its opponent in the action." *Hodak v. Madison Capital Mgmt., LLC*, 2008 WL 2355798, *3 (E.D.Ky.2008). *See also In re Lott*, 424 F.3d 446, 454 (6th Cir.2005). This principle is also inapplicable. The mere possibility that the Jorden Burt Report and Gwin Charts could provide Defendants with relevant evidence "is not a sufficient basis for finding a waiver of the privilege." *Hodak*, 2008 WL 2355798 at *3. Plaintiff has not used the Jorden Burt Report or the Gwin charts to defend in this litigation or to attack Defendants. As such, implied waiver is inapplicable.

■ Also contrary to Defendants' allegations, the crime-fraud exception has no application to the facts of this case. The test for claiming the exception is twofold: "[f]irst, the [party desiring production] ... must make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the [party] ... must establish some relationship between the communication at issue and the *prima facie* violation." *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 382 (W.D.Ky.2007) (internal citations omitted). To satisfy this standard, the evidence presented must be such that a prudent person would have a reasonable basis to suspect the perpetration of a crime or a fraud. *Id.* (internal citations omitted).

■ Here, Defendants' claims of 'very bad-faith and fraudulent acts' [R. 38] are nothing more than bare allegations of criminal purpose. Although a lesser showing is required to trigger an *in camera* review, the party seeking the application of the crime-fraud exception must, nonetheless, "present *evidence* sufficient to support a reasonable belief that *in camera* review might yield evidence that establishes the applicability" of the exception. *Invesco*, 244 F.R.D. at 382 (citing *Stidham v. Clark*, 74 S.W.3d 719, 727 (Ky.2002) (emphasis added)); *see also United States v. Zolin*, 491 U.S. 554, 571, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Defendants have failed to meet their burden. In short, Defendants have reiterated claims asserted in their Counterclaim [R. 9], but have failed to present any *evidence* in support of the exception. Accordingly, the materials sought are not discoverable.

### 2. The Wakely Report

Defendants next seek an order compelling production of a "cancer claim cost study" (referred to by both parties as the "Wakely Report") prepared by an outside consultant, Wakely & Associates, Inc. Plaintiff claims this report is irrelevant, confidential, proprietary, and non-discoverable. According to Plaintiff, the Wakely Report is a claim cost study which is composed of and analyzes financial data from January 1, 1996 through December 31, 2000. [R. 50]. Plaintiff's in-house actuary has testified that the study "was prepared for the specific and express purpose of providing a basis for the development of expected cancer claims costs to be used for pricing, computing active life reserves, and corporate modeling." [R. 50–5, *Gwin Declaration*]. It had no bearing on its claims procedures, claims processing, or initial investigation of the causes of premium rate increases in 2004. Likewise, Plaintiff argues, that the study bears no relationship to Defendants' claims submitted between the years 2008 and 2010.

■ This request shall be denied because it seeks information which is not relevant to the claims or defenses in the action and is not designed to lead to discovery of relevant information. The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense" or appears reasonably calculated to lead to the discovery of relevant evidence. Fed.R.Civ.P. 26(b).

*See Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Lewis v. ACB Bus. Services, Inc.,* 135 F.3d 389, 402 (6th Cir.1998). When considering a motion to compel, a discovery request "should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant" to a claim or defense raised. *Dilback v. Gen. Elec. Co.,* 2008 WL 4372901, \*4 (W.D.Ky. 2008) (internal citations omitted).

 A party resisting discovery must show that "the material [sought] either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco,* 244 F.R.D. at 380 (internal citations omitted). Ultimately, the scope of discovery is "within the broad discretion of the trial court." *Lewis,* 135 F.3d at 402 (internal citations omitted).

Although traditionally broad, discovery has "ultimate and necessary boundaries." *Oppenheimer Fund,* 437 U.S. at 351, 98 S.Ct. 2380 (internal citations and quotations omitted). The discovery sought by Defendants falls outside those boundaries. The premium rate increases and changes to the language of Transamerica's supplemental policy relevant to this matter took place between 2004 and 2006. Both parties have mentioned in their pleadings that the 'DSI Taskforce' charged with investigating various issues related to Transamerica's policy changes was created in 2004 and the relevant changes to claims processing were made in 2006 [R. 38; R. 50].

Moreover, this information is highly proprietary given that it was used as an aid in developing pricing, computing active life reserves, and corporate modeling. The marginal relevance of obtaining this information is outweighed by the potential harm to Plaintiff from its disclosure. Plaintiff's reliance on the data accumulated in the Wakely Report in its requests for rate increases filed with the Kentucky Department of Insurance between 2003 and 2005 is inconsequential because Transamerica has already produced copies of its Kentucky rate filings. This production includes actuarial memoranda, actual and projected loss calculations, and claims data related to the policy purchased by Mrs. Moore. Accordingly, this request is denied.

### 3. Deposition Transcripts

Defendants also seek production of deposition transcripts of Plaintiff's employees who have testified in similar litigation. Defendants argue that all depositions (along with the exhibits attached thereto) previously taken are relevant or could lead to relevant information because they were taken in actions involving nearly identical legal issues as to substantially similar policy forms. Plaintiff argues this request is unduly burdensome.

 This discovery request will be granted in part and denied in part. Plaintiff must produce deposition transcripts taken in actions involving similar claims and policies. These transcripts are relevant or can lead to discovery of other relevant information. *Roesberg v. Johns–Manville Corp.,* 85 F.R.D. 292, 302 (E.D.Pa.1980). In light of the fact that the depositions sought were given in substantially similar litigation and discuss substantially similar insurance policies, these materials could "reasonably could lead to other matters that could bear upon, any issue that is or likely may be raised in the case." *Invesco,* 244 F.R.D. at 380 (internal citations omitted). Additionally, Plaintiff has not specified how many deposition transcripts are at issue and, consequently, failed to "specifically establish the nature of any alleged burden." *Burton Mech. Contractors, Inc. v. Foreman,* 148 F.R.D. 230, 233 (N.D.Ind. 1992).

On the other hand, Plaintiff is under no obligation to produce personnel records and other confidential information attached to the depositions. Personnel files and evaluations bear no relevance to the claims asserted in this matter. Accordingly, Plaintiff must produce the deposition transcripts requested, but is under no obligation to produce personnel records and personal confidential conformation attached to the depositions.

### 4. Actuarial Memoranda Created at the time the Subject Policy was Sold to Mrs. Moore

Request No. 18 of Defendants' First Request for Production of Documents seeks "all

documents which explain the actuarial basis for the pricing of the Policy" sold to Nancy Moore [R. 38–2]. Plaintiff objects to production on the basis that these internal documents are irrelevant to the claims in the litigation and the burden associated with locating and producing documents which date back to 1994 is unreasonable.

■ This request will be granted. When considering a motion to compel, the Court must decide whether "there is *any* possibility that the information sought may be relevant" to a claim or defense raised in the litigation. *Dilback,* 2008 WL 4372901 at *4. 'Relevance' is construed broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may in the case." *Oppenheimer Fund,* 437 U.S. at 351, 98 S.Ct. 2380; *Invesco,* 244 F.R.D. at 380. Here, the request seeks relevant information and is not overly broad such that it would subject Plaintiff to an undue burden.

### 5. *Document which Reflect Plaintiff's Decision to Stop Selling Subject Policy*

Next, Defendants seek the following:

*[A]ll documents* which refer to or reflect the decision to stop selling the Policy. Included in this request, *without limitation,* are actuarial memoranda which discuss any claims, trends or other factors which were considered in making the decision to stop selling the Policy, and *any communications* among Plaintiffs employees concerning the decision to stop selling the Policy.

[R. 38–3, Defendants' *Second Request for Production of Documents,* Request No. 2].

■ This request shall be denied. The court can limit discovery if it determines that the requested discovery is (1) unreasonably cumulative; (2) obtainable from some other source that is more convenient, less burdensome, or less expensive; (3) the party seeking discovery has had ample opportunity for discovery in the action to obtain the information; or (4) the burden or expense of the proposed discovery outweighs its likely benefit. *Medtronic Sofamor Danek, Inc. v. Michelson,* 229 F.R.D. 550, 552–53

(W.D.Tenn.2003) (citing Fed.R.Civ.P. 26(b)(2)(i)-(iii)); *Chavez v. DaimlerChrysler Corp.,* 206 F.R.D. 615, 619 (S.D.Ind.2002) (citing same). Generally, a discovery request is considered overly broad or unduly burdensome on its face if it "(1) uses an omnibus term . . . and (2) applies to a general category or group of documents or a broad range of information." *Moses v. Halstead,* 236 F.R.D. 667, 672 (D.Kan.2006).

■ This request is unduly burdensome. [R. 38–3]. Because it seeks production of *all* documents, including *any* communication between Plaintiff's employees (without even specifying which types of employees' communication is subject to this request), the burden associated with this request outweighs any potential benefit upon production to Defendants. Accordingly, this request is denied.

### 6. *The Transamerica Document Designated "CONFIDENTIAL"*

Lastly, Defendants seek removal of the "Confidential" designation on the document (Bates Stamped TLIC00377Moore) [R. 38]. The document, filed under seal [R. 40], is addressed to examiners and supervisors and states, in relevant part, and relates to claims processing of 'actual charges.' The document is dated November 11, 1997. [R. 40].

■ The document Bates Stamped TLIC00377Moore shall retain its "Confidential" designation. This document has already been produced by Plaintiff [R. 40] and can be used in accordance with the terms of the Protective Order [R. 23]. In relevant part, the Order provides that materials designated 'confidential' "shall be used only for purposes of preparing for and litigating this Action (including appeals) and not for any other action or purpose." [R. 23 at p. 4]. Access to 'confidential' materials is limited, but includes "any jury empaneled in this Action" and persons who demonstrate a "bona fide need to review it." [R. 23 at p. 4–5].

■ Defendants contend that the content of this document is important to the case. However, this alone does not justify removal of the 'confidential' designation. Generally, the party seeking removal of the confidential

designation must establish that the information is "sufficiently relevant and necessary to his case to outweigh the harm disclosure would cause to the person from whom he is seeking the information." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 138 F.R.D. 530, 534 (C.D.Ill.1991) (internal citation omitted). *See also Standard Process, Inc. v. Total Health Discount, Inc.,* 559 F.Supp.2d 932, 944 (E.D.Wis.2008).

The document in question is relevant to the issues raised by the parties in this matter; however, its 'confidential' designation in no way impedes Defendants' ability to use it in this litigation. In fact, Defendants have failed to explain *how* the document's 'confidential' designation hinders their use of the document in the present action. The Protective Order specifically allows the use of this document in *"litigating this Action* (including appeals)" and presenting the document to the empaneled jury. [R. 23]. On the other hand, substantial harm could result to Plaintiff if the 'confidential' designation is removed from the document in question. For instance, public disclosure and dissemination of the document could lead to loss of business and an influx of frivolous litigation. Accordingly, this request shall be denied.

### III. CONCLUSION

Having considered this matter fully, and for the reasons discussed above, it is ORDERED AS FOLLOWS:

(1) Defendants' Motion to Compel [R. 38] shall be GRANTED as to:

(i) The deposition transcripts requested;

(ii) The actuarial memoranda created at the time the Policy was sold.

(2) Defendants' Motion to Compel [R. 38] shall be DENIED as to:

(i) The Jorden Burt Report and Gwin Charts;

(ii) The Wakely Report;

(iii) The documents which reflect Plaintiff's decision to stop selling the Policy;

(iii) The 'confidential' document Bates Stamped TLIC00377Moore [R. 40].

(3) Plaintiff must supplement its responses to the discovery requests, in accordance with this Order, within fourteen (14) days of entry of this Order.

