RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0726-MR

SANDRA JONES BECK, M.D.; JUSTIN                          APPELLANTS
PETERSON, M.D.; AND JENNIFER
TAVITIAN, R.N.


                        ON APPEAL FROM COURT OF APPEALS
V.                            NO. 2019-CA-1313
                    FAYETTE CIRCUIT COURT NO. 18-CI-03413


HONORABLE ERNESTO SCORSONE,                                 APPELLEE
JUDGE FAYETTE CIRCUIT COURT,
DIVISION SEVEN


AND


ANDREA BRANDENBURG                           REAL PARTY IN INTEREST


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**REVERSING AND REMANDING**

Pending in the circuit court is a medical-negligence suit filed by Andrea

Brandenburg against the Medical Center;[1] the three named Appellants, Sandra

Jones Beck, Justin Peterson, and Jennifer Tavitian, healthcare professionals

employed by the Medical Center; and ten other healthcare professionals

---

[1] The University of Kentucky Medical Center, d/b/a UK Healthcare, d/b/a University of Kentucky A. B. Chandler Medical Center, d/b/a UK Medical Center, the University of Kentucky, all collectively referred to in this opinion at the Medical Center, were dismissed with prejudice by the trial court based on sovereign immunity.

identified as unknown defendants, all of whom are also allegedly employed by Medical Center.[2]

Appellants appeal to this Court from the Court of Appeals' denial of their application for a writ of prohibition, seeking to prevent the trial court from enforcing a protective order that forbids them from all ex parte communication with Brandenburg's unnamed treating physicians or other healthcare providers employed by the Medical Center. They assert that the trial court's order erroneously denies them the right to confer informally with coworkers inside their own practice group and effectively blocks their ability to engage the same attorneys for a potential common defense of all claims. The Appellants argue the trial court's erroneous order results in an irreparable injury incapable of remedy by appeal or otherwise.

Because we conclude that the orderly administration of justice requires us to address an issue that we perceive as having statewide application, we proceed directly to examine the merits of the underlying order, holding that the trial court abused its discretion because the basis of the order is ostensibly the personal conviction of the trial court that departs from precedent without providing appropriate justification at variance with precedent of the Commonwealth. Accordingly, we reverse the decision of the Court of Appeals and remand this case to the Court of Appeals with direction to issue a writ consistent with this decision.

---

[2] Luis Acosta Briceno, MD, was voluntarily dismissed by agreed order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants are two doctors and a registered nurse, all employed by the Medical Center. The unnamed defendants are also alleged to be healthcare professionals who are employees of the Medical Center. During pretrial discovery, Appellants moved for a Qualified Protective Order (QPO) that, if granted, would authorize their counsel to request voluntary ex parte interviews of Brandenburg's non-party treating healthcare providers in compliance with state law and HIPAA regulations.

Brandenburg opposed the QPO motion with three points. First, she argued that *Caldwell v. Chauvin*[3] merely provided a procedure for HIPAA-compliant QPOs but did not establish a right for medical-malpractice defendants to ex parte communications with a plaintiff's treating healthcare professionals. Second, she argued that she had an ongoing physician-patient relationship with certain treating physicians at the Medical Center that may be jeopardized if ex parte interviews with them were authorized and conducted. Lastly, while acknowledging there is no physician-patient privilege recognized in Kentucky, she posited that confidentiality obligations are imposed on physicians by statutes and codes of medical ethics in other jurisdictions, though without the force of law in Kentucky, the violation of which could expose the medical professional to discipline or liability. Appellants' counsel responded that these interviews are voluntary, that she was not aware of any instance of a Kentucky physician subjected to professional discipline for

---

[3] 464 S.W.3d 139 (Ky. 2015).

consenting to ex parte interviews, and that ex parte interviews simply "levels the playing field" in terms of case investigation and the expense of discovery.

To Appellants' "level playing field" argument at the hearing on the QPO motion, the trial court replied, "Well, yeah, but it's [Brandenburg's] doctor." Acknowledging the physician's right to refuse an ex parte interview, the trial court continued,

> "[F]or me to stamp approval on something like this–these ex parte communications–I really have a hard time doing that unless there's some unique fact situation, whether it's the behavior of the healthcare provider or the patient.... But absent something unique. . . . I think it's not good policy to allow ex parte communications. So, I appreciate the opportunity to do this, I've had this opportunity a number of times and I've declined every time because I didn't think there was a unique fact situation that called for it. So, I appreciate your advocacy, but I'm going to deny the request."

When Appellant asked what "unique fact situation" might persuade the trial court to authorize a similar request, the trial court responded: "I haven't granted [these motions] yet because I haven't seen any unique fact situations. I'm open to it, I don't know, but it's got to be something unique, you know, that would really convince me that ex parte is appropriate."

The trial court denied the QPO and inserted into its order— apparently on the trial court's own motion—the following additional prohibition:

> Other than the Defendants whom Defense Counsel represents herein, no ex parte communications by the Defendants or their counsel shall take place with Plaintiff's treating physicians and healthcare provider regarding the facts and issues in this case.

At a later hearing prompted by Appellants' motion to clarify the meaning of the trial court's language imposing this discovery prohibition, the trial court

4

confirmed the language in the order, stating that the language prohibits any ex parte communication about the facts and issues in the case unless counsel is personally representing the treating physician or healthcare provider as a client.

The Appellants then brought an original action in the Court of Appeals for a writ to prohibit the trial court from enforcing this order to the extent it precludes them from conducting ex parte interviews of Brandenburg's treating physicians and healthcare workers employed by the Medical Center. The Court of Appeals declined to issue the writ, holding the Appellants had an adequate remedy by appeal regardless of whether the trial court acted erroneously by issuing the discovery prohibition. This appeal followed as a matter of right.[4]

## II. STANDARD OF REVIEW

A writ is an extraordinary remedy generally disfavored in Kentucky law.[5] "[T]he issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court."[6] Our reluctance to entertain writ petitions, much less grant them, is clear from our precedent.[7] Here, the trial court's jurisdiction is

---

[4] Kentucky Rule of Civil Procedure (CR) 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court. . . .").

[5] *Caldwell* at 144 (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013)).

[6] *Commonwealth v. Shaw*, 600 S.W.3d 233, 237 (Ky. 2020) (citing *Caldwell*, at 145–46) (internal quotations omitted). *See also Graham v. Mills*, 694 S.W.2d 698, 699–700 (Ky. 1985).

[7] *Caldwell* at 144–45 (citing *Bender v. Eaton*, 343 S.W.2d 799, 800 (Ky.1961)).

undisputed, which made the proceedings before the Court of Appeals an application for a writ of the second class, as the Court of Appeals correctly found. And since the trial court's order was itself an order governing pretrial discovery with no disputed factual determinations, we will reverse the Court of Appeals' denial of the writ only by finding it abused its discretion.[8]

### III. ANALYSIS

For a writ of the second class, the applicant must show error by the court below that will result in great harm or irreparable injury that cannot be adequately rectified by appeal or otherwise.[9] And even if an appeal is shown to be inadequate or unavailable, the applicants must still show that they will suffer a "great injustice or irreparable harm" if a writ is not issued.[10] The harm alleged should be a "harm of a ruinous nature,"[11] not mere expense, inconvenience, or loss of strategic advantage.[12]

This rule is not absolute. Our law recognizes a so-called "special-cases exception" to the great-and-irreparable-harm element that allows the issuance of a writ in the interest of "orderly judicial administration" if, upon review of the merits underlying the writ petition, the reviewing court is satisfied that the lower court is proceeding erroneously and "a substantial miscarriage of justice

---

[8] *Caldwell* at 146. *See, e.g.*, *St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 777 (Ky. 2005).

[9] *Id.* at 145 (citing *Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004)).

[10] *Hoskins* at 6.

[11] *Bender* at 801.

[12] *See Robertson v. Burdette*, 397 S.W.3d 886, 891 (Ky. 2013) (citing *Fritsch v. Caudill*, 146 S.W.3d 926, 930 (Ky. 2004)).

will result" if the lower court's error stands uncorrected.[13] As we summarized the law in *Caldwell,* in cases seeking a second-class writ, we typically approach first the elements of the great injustice and irreparable harm as prerequisite to consideration of the merits. But our precedent also authorizes us to proceed directly to the merits of the dispute when they are uncomplicated and doing so would promote the end of "judicial economy in limiting the breadth of analysis appellate courts undertake when considering writs."[14]

We proceed directly to the merits of the present discovery dispute because we conclude error lies in the trial court's arbitrary discovery prohibition that misapplies existing precedent. And as we acknowledged in *Caldwell,* discovery disputes, as a general matter, come to us nearly always via writ petitions, so considering the merits of such petitions affords us the opportunity to ensure that the law is uniformly applied in the trial courts across the Commonwealth.[15] Failure to correct the instant erroneous order is to undermine the assurance to parties and their counsel the uniform application of law among the trial courts of this state. We determined quite clearly in *Caldwell* that while no absolute right exists to conduct ex parte communications with nonexpert treating healthcare professionals, no default restrictions, as a matter of Kentucky law and policy, limit them.[16] Contrary to this precedent, the trial court here issued an order prohibiting all ex parte

---

[13] *Caldwell* at 145 (citing *Bender,* at 801).

[14] *Id.* at 146 n.16 (quoting *So. Fin. Life Ins. Co. v. Combs,* 413 S.W.3d 921, 927 n.20 (Ky. 2013).

[15] *Id.* at 148.

[16] *Caldwell* at 154–55.

contacts with healthcare witnesses seemingly because, using the trial court's own words, "it's not good policy to allow ex parte communications." Importantly, the trial court identified no other reason grounded in the facts of the case before it to prohibit all ex parte interviews with potential witnesses who are physicians or healthcare workers. The only basis for this order, as articulated by the trial court at the hearing, was the trial court's own personal policy predilection rather than the application of law to facts. This order appears arbitrary.

The orderly administration of justice depends on consistent and non-arbitrary decision-making by the trial court acting as gatekeeper in the discovery process. There is a special risk that cases like this, where a trial court asserts a personal policy predisposition over the precedent set by this Court, absent some other justification, will result in disparate outcomes for litigants depending on the judge presiding over their case.[17] Parties litigating before our courts deserve confidence that the issues they present to a court will be determined under controlling precedent applied under reasoned, accepted principles of law and procedure.[18] Where the resolution of issues and disputes

---

[17] *See Jenkins v. Commonwealth*, 496 S.W.3d 435, 451 (Ky. 2016) ("[P]recedent is presumptively binding. In other words, *courts cannot depart from previous decisions simply because they disagree with them. . . .* However, judges may disregard precedent if they offer some special justification for doing so.") (emphasis in original) (internal quotations and citations omitted).

[18] *Matheney v. Commonwealth*, 191 S.W.3d 599, 608 (Ky. 2006)(Graves, J., concurring) (citing *Payne v. Tennessee*, 501 U.S. 808, 827–30 (1991) ("*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process. Adhering to precedent 'is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.'") (citations omitted)).

depends instead on which judge happens to preside, the resolution is rendered arbitrary, unfair, and therefore disorderly.

This writ should issue without prejudice to either party to address this discovery matter again before the trial court. Upon the Court of Appeals' issuance of the writ as directed herein, the trial court may, upon appropriate motion, revisit the issue of the Appellants' ex parte contacts with Brandenburg's unnamed treating physicians and other healthcare providers and, in the exercise its discretion, issue further orders as may be legally justified by the facts of the present case.

## IV. CONCLUSION

Concluding that the Court of Appeals abused its discretion in denying the writ, we reverse its decision and remand the case to that court with directions to issue the writ.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Wesley Reed Butler
Holly Renee Iaccarino
Barnett Benvenuti & Butler PLLC

Sara Clark Davis
Karen Lee Keith
McMasters Keith Butler, Inc.

William Eugene Thro
University of Kentucky, Office of Legal Counsel

Margaret Mary Pisacano
University of Kentucky Medical Center Department of Risk Management

Honorable Ernesto Scorsone, Judge
Fayette Circuity Court, Division Seven

COUNSEL FOR REAL PARTY IN INTEREST, Andrea Brandenburg:

Richard Alan Getty
Danielle Harlan
Gregory Kerr Jenkins
Marcel Elaine Radomile
The Getty Law Group PLLC