RENDERED: JUNE 25, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0236-MR

SAINT ELIZABETH MEDICAL CENTER, INC.                    APPELLANT

|  | ON APPEAL FROM COURT OF APPEALS |
|---|---|
| V. | NO. 2024-CA-1386 |
|  | KENTON CIRCUIT COURT, NO. 20-CI-01729 |

HONORABLE PATRICIA M. SUMME,                          APPELLEE
JUDGE, KENTON CIRCUIT COURT


AND

RICKY GRIMES; KAREN GRIMES;            REAL PARTIES IN INTEREST/
ANTHEM HEALTH PLANS OF KENTUCKY;                     APPELLEES
SUMMIT MEDICAL GROUP, INC.; AND
MICHAEL K. DAVENPORT, M.D.

**OPINION AND ORDER OF THE COURT BY JUSTICE CONLEY**

**<u>REVERSING AND REMANDING</u>**

This case is before the Court upon appeal from the Court of Appeals' decision denying a writ of prohibition sought by Appellant, Saint Elizabeth Medical Center, Inc., concerning the interpretation of KRS 311.377. Specifically, the question is whether the Completed Application Materials—a doctor's answers to a multitude of questions propounded by Saint Elizabeth's Credentials Committee as part of its process granting privileges to said doctor— is privileged information within the meaning of KRS 311.377. We cannot agree with the Real Parties in Interest's insistence that the Completed Application Materials are separate and distinct from the credentialing process and can

never be privileged. Conversely, we cannot agree with Saint Elizabeth's insistence that merely by being a record of the Credentialing Committee, the information within the Materials is always privileged.

The Completed Application Materials are a part of the credentialing process and are a record of the credentialing process, therefore, generally privileged under KRS 311.377(2). Under the circumstances of this case, both the trial court and Court of Appeals erred in holding KRS 311.377(2) did not apply. Accordingly, the Court of Appeals is reversed, and the writ of prohibition will lie. Specific information disclosed in the Completed Application Materials, however, is not always privileged because that information may be discovered independently of the process of the Credentialing Committee. KRS 311.377(3). "[T]he placement of otherwise discoverable records and information in a peer review file does not entitle them to the protection of KRS 311.377(2)." *Leanhart v. Humana, Inc.*, 933 S.W.2d 820, 821 (Ky. 1996). The amendments to KRS 311.377 in 2018 do not alter the principle affirmed in *Leanhart.* 2018 Ky. Acts 11. On remand, the trial court will have the opportunity to re-evaluate the Completed Application Materials to determine if any information contained in it meets the exception contained in KRS 311.377(3).

We reverse the Court of Appeals, vacate the trial court's order, and remand to Kenton Circuit Court to conduct the proper statutory analysis, namely, to determine if the information in the Completed Application Materials, that is generally privileged under KRS 311.377(2), meets the exception to that privilege contained in KRS 311.377(3) as recognized by *Leanhart.*

2

## I. Facts and Procedural Posture

This case is rather convoluted. The underlying facts of Ricky Grimes' injury are irrelevant, although it is helpful to know Grimes' injuries are alleged to have stemmed from Dr. Michael Davenport's performance of a Da Vinci robot-assisted surgery. Dr. Davenport has privileges at Saint Elizabeth to use the Da Vinci surgical robot on its premises according to its Credentialing Committee. To obtain this privilege, Dr. Davenport electronically filled out the Application Materials and submitted them to the Credentialing Committee. In other words, the Completed Application Materials initiated the process of obtaining the privilege. After his surgery, Grimes eventually filed suit alleging that Saint Elizabeth negligently granted Dr. Davenport privileges to perform the surgery.

Over a period of several months in 2024, multiple motions were filed to compel discovery of a multitude of documents. In June 2024, a motion was filed seeking to compel, *inter alia*, the Completed Application Materials. Saint Elizabeth responded with a privilege log, which generally asserted the privilege contained in KRS 311.377 as applicable to the entirety of the Materials. On August 12, 2024, Saint Elizabeth filed a motion for *in camera* review of the Materials. On August 13, the trial court granted the June motion to compel but ordered the Completed Application Materials be submitted for *in camera* review. On September 27, 2024, after reviewing the Materials, the trial court held "the

original credentialing applications and [robotic] standards[1] are not covered by KRS 311.377 nor any other protection and should be produced unredacted." Despite having a privilege log and having conducted *in camera* review, the trial court allowed Saint Elizabeth to file further objections to its order. Those objections and the response of Grimes were filed by the end of October. On November 15, 2024, Saint Elizabeth filed for the writ of prohibition in the Court of Appeals.

Complicating this dispute is Saint Elizabeth's repeated assertion that it agrees with the general principle affirmed in *Leanhart* that otherwise discoverable materials do not become privileged merely by being placed in the records of the Credentialing Committee. Saint Elizabeth affirms multiple times that it has disclosed such discoverable material from the entirety of its credentialing file for Dr. Davenport. This raises the question, though, of what exactly about the Completed Application Materials is privileged? The best answer Saint Elizabeth gives is that the document itself is a part of the record for the credentialing process and is privileged under KRS 311.377. That statute states,

> At all times in performing a designated professional review function, the proceedings, records, opinions, conclusions, and recommendations of any committee, board, commission, medical staff, professional standards review organization, or other entity . . . shall be confidential and privileged and shall not be subject to discovery, subpoena, or introduction into evidence . . . .

---

[1] There was a separate dispute before a separate Court of Appeals panel involving whether to grant a writ of prohibition for "the portion of a blank application for privileges that addressed performing Da Vinci robotic surgery at the time." The Court of Appeals denied the writ and its order was not appealed.

KRS 311.377(2). According to Saint Elizabeth, by filling out the Credentialing Application and answering the questions developed and propounded by the Credentialing Committee, Dr. Davenport initiated the Credentialing process; that it is an integral, indeed seminal, part of a "designated peer review function" and is a "record" of the Credentialing Committee; *ergo*, privileged.

Grimes responds, "the plain language of the [sic] KRS 311.377 only provides protection for . . . the review or decision-making of whether to grant a particular physician credentials." In other words, Grimes contends the Completed Application Materials are the answers of Dr. Davenport and "do not contain the protected evaluative proceedings, records, or conclusions of a peer review entity engaged in the review of credentials."

The Court of Appeals agreed with Grimes, holding,

[T]he document was prepared by Dr. Davenport and submitted to a committee, which only then began the process of its professional review function by assessing Dr. Davenport's qualifications.

. . .

The Real Parties in Interest further point out the distinction between the application itself and related documents prepared by the committee in the course of reviewing the application. The latter would evidence its mental impressions and the reasons for its credentialing decision. The former is simply information provided by someone else. While we recognize this may be considered a fine line, we view this distinction as meaningful. The trial court's order requires only the production of the completed application, which did ultimately give rise to the "designated review function." The trial court did not order production of documents related to the application which might actually evidence the performance of the review.

5

Thus, the Court of Appeals held the Completed Application Materials are not within the scope of KRS 311.377(2) and declined to issue a writ. Saint Elizabeth appealed, and we now address the merits.

## II.  Analysis

It is unnecessary to discourse at length upon the standards for a writ of prohibition. We routinely entertain petitions for writs of prohibition involving the potential disclosure of privileged materials. "This Court's precedent holds that violation of a privilege satisfies both the requirement of no adequate remedy by appeal, 'because privileged information cannot be recalled once it has been disclosed,' and the substitute requirement in 'special cases' that the administration of justice would suffer." *Collins v. Braden*, 384 S.W.3d 154, 158 (Ky. 2012) (quoting *St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005)). "Thus, remedy by a writ of prohibition is available to a petitioner claiming the potential violation of a privilege. Such relief will be granted, however, only upon a showing that the lower court has improperly ordered a disclosure that would violate a privilege." *Id.* (internal citations omitted).

"Because of the discretion intrinsic to the issuance of a writ, the decision of the Court of Appeals is typically reviewed for an abuse of discretion." *S. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013). When the petition only presents a question of law, however, a *de novo* standard of review is applied. *Id.* There are no factual disputes in this case, and its resolution involves only settling the interpretation of KRS 311.377; therefore, we render no deference to the Court of Appeals. Nonetheless, "[i]t is important to note that the granting of

6

a writ is an inherently discretionary decision; and even if all the requirements for the issuance of a writ are met, it is still within the discretion of the court to deny the issuance of the writ." *Id.*

The parties agree that Saint Elizabeth is a covered entity under KRS 311.377 and was performing a "designated professional review function" when it granted Dr. Davenport privileges. KRS 311.377(2). When a covered entity is performing a designated professional review function, KRS 311.377(2) privileges from disclosure all "the proceedings, records, opinions, conclusions, and recommendations of" said covered entity. Grimes and the Court of Appeals rely on a distinction between Dr. Davenport *submitting information* to the Credentialing Committee and the Committee's *discussions and review* of that information. The Court of Appeals conceded this was a fine line—and it is. The error is such line drawing is neither compelled nor warranted by the statutory language.

We interpret statutes according to their plain meaning. *Commonwealth v. Grise,* 558 S.W.3d 923, 929 n.28 (Ky. 2018). By listing "the proceedings" and "records" separately from "opinions, conclusions, and recommendations[,]" the General Assembly created distinctions between each that cannot be ignored. The Court of Appeals' opinion, however, holds only those records that contain the "opinions, conclusions, and recommendations" of the entity performing the designated professional review function are protected. The lower court couched this in terms of "mental impressions and reasons for its credentialing decision," but the effect is the same. The Court of Appeals read the statute as if "opinions,

7

conclusions, and recommendations" modified "records," which is not justified by the comma in the text. Put plainly, the statute does not read "proceedings and records of opinions, conclusions, and recommendations." It treats each of these five things as separate and distinct.

Because a "record" is something independent of "opinions, conclusions, and recommendations[,]" Saint Elizabeth persuasively argues and analogizes the submission of the Completed Application Materials to the filing of a complaint in a court of law. Both documents initiate a proceeding. Just as no one would be so bold as to deny the complaint is a part of the lawsuit, similarly, the Completed Application Materials are a part of the "designated professional review function." The credentialing process does not occur but for the submission of the Completed Application Materials. Accordingly, it is a "record" privileged by KRS 311.377(2). We agree with Saint Elizabeth that a document which initiates a designated professional review function is necessarily a part of that designated professional review function. We conclude the Completed Application Materials submitted by Dr. Davenport are a record within the meaning of KRS 311.377(2) and are generally privileged. Insofar as the Court of Appeals held the Completed Application Materials are outside the scope of KRS 311.377(2), it is reversed. This, however, is a discrete question of law within a broader body of law.

We have long held "the placement of otherwise discoverable records and information in a peer review file does not entitle them to the protection of KRS 311.377(2)." *Leanhart*, 933 S.W.2d at 821. It could be stated more generally

8

that the placement of discoverable materials or information in an otherwise privileged file does not imbue said discoverable materials or information with the privilege. *Leanhart* specifically relied upon KRS 311.377(3) for its holding, which states:

> Nothing in subsection (2) of this section shall be construed to restrict or limit the right to discover or use in any civil action or other administrative proceeding any evidence, document, or record which is subject to discovery independently of the proceedings of the entity to which subsection (1) of this section refers.

Saint Elizabeth affirms this principle repeatedly but hints that *Leanhart* may no longer be good law because of amendments to KRS 311.377 in 2018. We find no basis for that suggestion. The 2018 amendment added the following underlined language:

> At all times in performing a designated professional review function, the proceedings, records, opinions, conclusions, and recommendations of any committee, board, commission, medical staff, professional standards review organization, or other entity, as referred to in subsection (1) of this section, shall be confidential and privileged and shall not be subject to discovery, subpoena, or introduction into evidence, in any civil action in any court, including but not limited to medical malpractice actions, actions arising out of review of credentials or retrospective review and evaluation as referred to in subsection (1) of this section, and actions by an applicant for or grantee of staff privileges as referred to in subsection (1) of this section, or in any administrative proceeding before any board, body, or committee, whether federal, state, county, or city, except as specifically provided with regard to the board in KRS 311.605(2). The confidentiality and privilege protections of this subsection shall only be available to a person or entity that attests to participating in a patient safety and quality improvement initiative, including the program established by the Patient Safety and Quality Improvement Act of 2005, 42 U.S.C. secs. 299b-21 to 299b-26. This subsection shall not apply to any proceedings or matters governed exclusively by federal law or federal regulation.

9

KRS 311.377(2); KY LEGIS 11 (2018), 2018 Kentucky Laws Ch. 11 (HB 4). KRS 311.377(3) remained untouched by the General Assembly.

Nothing in this new language can plausibly be interpreted as legislatively overruling or otherwise countermanding the rule affirmed in *Leanhart*. "The failure of the legislature to change a known judicial interpretation of a statute is extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted." *Commonwealth v. Bloyer*, 647 S.W.3d 219, 225 (Ky. 2022) (quoting *Toyota Motor Mfg., Ky., Inc. v. Prichard*, 532 S.W.3d 633, 636 (Ky. 2017)). *Leanhart* has been on the books for nigh on thirty years, and the lone legislative amendment to KRS 311.377(2) since its initial passage in 1990 does not in any way disparage *Leanhart*'s holding. "This lack of action by the General Assembly evidences its acquiescence with our interpretation." *Id.*

Accordingly, a writ of prohibition does lie. The trial court has ordered disclosure of the Completed Application Materials on the erroneous conclusion that KRS 311.377(2) did not apply to it; thus, the Materials were not privileged. The Court of Appeals affirmed that understanding of the statute. Because KRS 311.377(2) does apply, the Completed Application Materials are generally privileged, and disclosure can only be allowed under the specific circumstances contained in the exception to the privilege found in KRS 311.377(3). Given the record before us, we cannot say that any portion of the Completed Application Materials is not subject to discovery under the proper statutory test. In

10

accordance with the law, the proper remedy is to issue the writ, clear the slate, and allow the trial court to re-evaluate the issue under the proper statutory framework set out above.

We also remind the Appellants on remand that "[i]t is the burden of the party asserting a privilege to prove its existence." *Collins*, 384 S.W.3d at 163. "The party claiming the privilege must do more than merely assert the privilege. It must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts." *Id.* at 164-65. Moreover,

> [t]he *in camera* review method should not be utilized as a way to thrust the burden of determining privilege onto the trial court. Litigants should attempt in good faith to separate out materials that are not privileged and only ask the trial court to review those materials that it truly believes are protected by a privilege.

*State Farm Mut. Auto. Ins. Co. v. Edwards*, 670 S.W.3d 873, 884 (Ky. 2023). In the context of this case, having now determined the proper statutory test, upon remand the Appellants should attempt in good faith to determine which information in the Completed Application Materials is subject to the exception contained in KRS 311.377(3), and only ask the trial court to review those portions of the Completed Application Materials in which the exception's applicability is a matter of good faith dispute.

### III.    Conclusion

The Court of Appeals is reversed, and the writ of prohibition does lie. We vacate the trial court's order and remand to Kenton Circuit Court to conduct the proper statutory analysis, namely, to determine if the information in the

11

Completed Application Materials, that is generally privileged under KRS 311.377(2), meets the exception to that privilege contained in KRS 311.377(3) and include its specific findings from that analysis in a written order.

All sitting. Lambert, C.J.; Bisig, Goodwine, Keller, and Thompson, JJ., concur. Nickell, J., dissents by separate opinion.

NICKELL, J., DISSENTING: Respectfully, I dissent. Because the stringent standards for extraordinary relief were not satisfied in the present matter, I would affirm the Court of Appeals' denial of the requested writ.

It is a universal principle of evidence law "that privileges should be strictly construed, because they contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'" *Sisters of Charity Health Sys., Inc. v. Raikes*, 984 S.W.2d 464, 468 (Ky. 1998) (quoting *Trammel v. United States*, 445 U.S. 40, 45 (1980)). "Moreover, the burden of proving that a privilege applies rests on the party claiming its benefit." *Id.* (citing Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 505, at 229 (3d ed. Michie 1993)). In *Collins v. Braden*, 384 S.W.3d 154, 164-65 (Ky. 2012), we further specified

> that when challenged, the party claiming the privilege must do more than merely assert the privilege. It must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts.

Here, the documents considered by the trial court were not included in the present record, and Saint Elizabeth has failed to provide a sufficient description of their contents in its privilege log. Such general and conclusory

12

assertions are insufficient to establish the existence of a privilege. *Id.* In the absence of adequate documentation, a reviewing court cannot "properly evaluate whether [the trial court's] determination that [the materials] were not privileged was an abuse of discretion." *Lexington Pub. Libr. v. Clark,* 90 S.W.3d 53, 63 (Ky. 2002). Thus, I would affirm the decisions of both lower courts in their entirety on this basis. *Id.*

I appreciate the majority's disagreement with the lower courts' interpretation of KRS 311.377(2). However, "[i]t is an elementary rule of appellate practice that a judgment will be affirmed if the result is right even though the reason stated by the trial court for the judgment is wrong or doubtful." *Entwistle v. Carrier Conv. Corp.*, 284 S.W.2d 820, 822-23 (Ky. 1955). In my estimation, the failure of Saint Elizabeth to adequately support its petition for writ of prohibition amply justifies the denial of the requested writ. Therefore, I respectfully dissent.

COUNSEL FOR APPELLANT:

Ryan M. McLane
Emma R. Gripshover
Dressman Benzinger LaVelle PSC


COUNSEL FOR APPELLEE:

Hon. Patricia Summe


COUNSEL FOR REAL PARTIES IN INTEREST/
APPELLEES, RICKY AND KAREN GRIMES:

Kendra E. Samson
Barton LLP

Philip N. Elbert
Womble Bond Dickinson (US) LP

COUNSEL FOR REAL PARTY IN INTEREST/
APPELLEE, ANTHEM HEALTH PLANS OF KENTUCKY:

Zachary Holt
Kolb Clare & Arnold PSC

COUNSEL FOR REAL PARTIES IN INTEREST/
APPELLEES, DR. MICHAEL K. DAVENPORT, M.D.,
AND SUMMIT MEDICAL GROUP:

Michael J. Enzweiler
Ellen M. Houston
Dressman Benzinger LaVelle PSC

COUNSEL FOR AMICUS CURIAE,
KENTUCKY DEFENSE COUNSEL

Alexander B. Clay
Joseph A. Wright
Thompson Miller & Simpson PLC