Vanda COLLINS (Individually and as Executrix of the Estate of Roy Collins), Appellant

v.

Honorable Paul BRADEN, Judge, Whitley Circuit Court (Now Deceased), Appellee.

and

Baptist Regional Medical Center, as an unincorporated division operating under the assumed name of Baptist Healthcare System, Inc.; Shahzad Shahmalak, M.D.; Unknown Nurses; Unknown Physicians; Unknown Psychologists; and Unknown Psychiatrists, Real Parties in Interest.

No. 2011–SC–000770–MR.

Supreme Court of Kentucky.

Oct. 25, 2012.

Robert Scott Madden, Morgan, Madden, Brashear, Collins & Yeast, PLLC, Manchester, KY, Daniel G. Yeast, Morgan, Madden, Brashear, Collins & Yeast, PLLC, Somerset, KY, Counsel for Appellant.

Honorable Paul Braden, Judge (Now Deceased), Honorable Paul Kenton Winchester, Judge, Now Sitting, Whitley Circuit Court, Whitley Circuit Court, Williamsburg, KY, Appellee.

Barbara Jean Meritt Bowers, Piper & Bowers, Lexington, KY, Charles J. Cronan, IV, Jamie Kristin Neal, Julie Marie McDonnell, Stites & Harbison, PLLC,

Louisville, KY, Counsel for Real Party in Interest, Baptist Regional Medical Center.

Robert Franklin Duncan, Jackson & Kelly, PLLC, Lexington, KY, Counsel for Real Party in Interest, Shahzad Shahmalak, M.D.

Opinion of the Court by Justice NOBLE.

The Appellant Vanda Collins asks this Court to reverse the Court of Appeals' decision granting a writ of prohibition stopping the Whitley Circuit Court from ordering the disclosure of various documents that Baptist Regional Medical Center, an Appellee and the Real Party in Interest, claims are protected by the attorney-client privilege. The Court of Appeals found that the documents were privileged and granted the writ. Because the hospital has failed to show that the privilege applies, the Court of Appeals' order is reversed.

## I. Background

On April 22, 2008, Roy Collins was admitted to Baptist Regional Medical Center after having overdosed on pills and leaving a suicide note. The attending physician had "heightened concerns" about Mr. Collins, and had him transferred to the inpatient psychiatric unit where suicide precautions were taken. On April 24, 2008, in the early morning, Mr. Collins used his hospital gown to hang himself and died. Hospital staff tried to resuscitate him, but they were unsuccessful.

Mr. Collins' wife, Vanda Collins, learned of his death when she arrived at the hospital that morning. Within hours, her attorney went to the hospital. Ms. Collins claims that she called him to help her contact her son, who practiced law with him, and to take care of administrative matters, such as identifying her husband. The hospital claims the attorney was called to investigate the circumstances of the death. On April 22, 2009,[1] Ms. Collins filed a medical negligence and wrongful death lawsuit against the hospital, the attending physician, and several unknown physicians, nurses, and other hospital employees.

Immediately after learning of Mr. Collins' death, the hospital's general counsel, Janet Norton, and corporate counsel, Karen Hensel, retained R. William Tooms, an attorney in London, Kentucky, to investigate the death. They later retained Barbara Bowers, a Lexington attorney, to assist Mr. Tooms. Ms. Bowers is defending the hospital in the lawsuit at the trial court. On February 2, 2009, the outside attorneys completed their investigation and submitted a document titled "Investigative Case Report" to the hospital's in-house attorneys and its risk manager, Kimberly Reeder. Included with the report were three attachments: a document titled "Behavioral Healthcare Consultants Report," dated September 30, 2008; a document titled "A Framework for a Root Cause Analysis and Action Plan in Response to a Sentinel Event"; and a schematic of the floor where Mr. Collins was a patient. The report was marked confiden-

---

1. This date is based on the inclusion in the record of a copy of the complaint that was stamped "filed" by the Whitley Circuit Clerk on April 22, 2009. The hospital's filings, both the writ petition at the Court of Appeals and the brief filed with this Court, claim the suit was filed on April 29, 2009, more than a year after Mr. Collins was admitted to the hospital and more than a year after his death. The statements of dates in this opinion are in no way intended to be findings as to when events actually occurred and do not control—as res judicata, collateral estoppel, law of the case, or otherwise—any possible claims related to the relevant statute of limitations.

tial. According to Ms. Norton's affidavit, the report was prepared "in conformity with the policy and procedure of Baptist Healthcare System, Inc. entitled Investigation of Sentinel Event/Critical Incident.'" A copy of this policy and procedure is included in the record; it was signed by Ms. Norton as the general counsel of the hospital.

Also on the day of Mr. Collins' death, the assistant coordinator in the hospital unit where Mr. Collins had been a patient filled out a "Risk Occurrence Report," which was marked "Privileged & Confidential—Attorney Work Product Document" and forwarded to the hospital's risk manager. This document was prepared pursuant to a written directive titled "System Policy and Procedures," and had a subject line reading "Professional/General Liability Incident Reporting Procedures." This document was also signed by Ms. Norton as the general counsel of the hospital.

During discovery in the case, the hospital identified the Investigative Case Report (and attachments) and the Risk Occurrence Report but claimed they were protected by the attorney-client privilege under KRE 503 and work-product protection under CR 26.02(3)(a), and thus were not discoverable. Ms. Collins moved the trial court to compel discovery of the documents, which the hospital opposed.

Initially, the trial court denied the motion to compel, finding that Ms. Collins had not established a substantial need or inability, without undue hardship, to obtain the substantial equivalent of the documents by other means. The court, however, also noted that it had "some difficulty accepting" that the documents were protected under the attorney-client privilege or as attorney work product.

After further discovery, Ms. Collins renewed the motion to compel. This time, the trial court granted the order, finding only

that "the Plaintiffs motion [was] well taken."

The hospital did not move for a protective order or *in camera* review of the documents, nor did it proffer to the trial court a description of the documents' content (such as whether they included statements from employees, legal advice, or other material). Nor did the hospital move to amend, alter, or vacate the order compelling the discovery. Instead, the hospital filed a petition for a writ of prohibition with the Court of Appeals.

The Court of Appeals granted the writ and ordered the trial court's order vacated. In reaching that decision, the court found that the hospital had shown that the documents in question were prepared by attorneys at the direction of its in-house general counsel for the purpose of communicating legal advice about its potential exposure to liability. The court also noted that the hospital's written policies showed an intent to keep the documents confidential and that there was no evidence that the documents had been disclosed to any outside party. Relying on *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771 (Ky.2005), the court concluded that the documents were thus protected by the attorney-client privilege and that the hospital was entitled to the writ of prohibition.

Ms. Collins now appeals to this Court as a matter of right. *See* CR 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals."); Ky. Const. § 115 ("In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court. . . ."). She has not asked this Court for intermediate relief under Civil Rule 76.36(4).

## II. Analysis

█ Writ cases require a two-step analysis. First, the court must look at whether such an extraordinary remedy is even available, before deciding the merits of the claimed legal error. Second, if the court finds that the remedy is available, it then looks at the merits of the alleged error, and if the trial court has erred or is about to err, the court writ may issue.

### A. The remedy of a writ of prohibition is available when the alleged error is the breach of an absolute privilege.

█ The first issue before this Court, then, is whether the hospital has established that remedy by way of an extraordinary writ is even available to it. The test for determining whether a writ is available was most succinctly stated as follows:

A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004). This statement lays out what we have described as two classes of writs, one addressing claims that the lower court is proceeding without subject matter jurisdiction and one addressing claims of mere legal error. The hospital did not claim the trial court acted without jurisdiction and instead sought the writ only under the second class.

█ Rather than trying to show the two prerequisites for that class—no adequate remedy by appeal, and great and irreparable injury—the hospital claims it is entitled to the writ under what has been described as an exception for "certain special cases." *See id.* at 20; *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky.1961). For those cases, the requirement of great and irreparable injury need not be shown. Instead, the court looks at whether "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Bender*, 343 S.W.2d at 801. "[I]n such a situation the court is recognizing that if it fails to act the administration of justice generally will suffer the great and irreparable injury." *Id.*

█ This Court's precedent holds that violation of a privilege satisfies both the requirement of no adequate remedy by appeal, "because privileged information cannot be recalled once it has been disclosed," and the substitute requirement in "special cases" that the administration of justice would suffer. *St. Luke Hospitals*, 160 S.W.3d at 775. Thus, remedy by a writ of prohibition is available to a petitioner claiming the potential violation of a privilege. *Id.* Such relief will be granted, however, only upon a showing that the lower court has improperly ordered a disclosure that would violate a privilege. *Id.*

█ Moreover, whether to grant a writ under such circumstances lies within the "sound discretion" of the appellate court hearing the petition. *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 809–10 (Ky.2004). Thus, this Court's review is for whether the Court of Appeals abused that discretion, unless the decision turns on a pure question of law, which is reviewed de novo. *Id.*

### B. The hospital has not yet shown that the attorney-client privilege applies to the documents in this case.

The next question is whether the trial court was correct in finding that the documents in question were not protected by the attorney-client privilege.

██ The analysis in any privilege case "begins with the almost universally accepted rule that testimonial privileges are generally disfavored and should be strictly construed." *Stidham v. Clark*, 74 S.W.3d 719, 722–23 (Ky.2002). Nevertheless, this Court must also recognize the importance of the specific privilege claimed in this case, the attorney-client privilege:

> The protection from disclosure of privileged communications between an attorney and client is one of the foundation principles of Anglo–American jurisprudence. Where the privilege applies its breach undermines confidence in the judicial system and harms the administration of justice.

*St. Luke Hospitals*, 160 S.W.3d at 775. Thus, it is not surprising that the Court of Appeals erred on the side of caution and found that the privilege applied to the documents in question.

Ms. Collins complains that the hospital used attorneys to investigate the matter and then used that to claim the facts they found were privileged. This evinces either a misunderstanding of how the attorney-client privilege works (and of what the hospital has claimed is protected) or what the hospital has claimed. At most, the communications between the hospital or its employees and the attorney (or the attorney's representative) are protected. This protection extends to any recordings of the statements, including reports prepared by the attorney.

But that is the limit of the privilege. It protects *only* the communication to the attorney. It does not protect any facts or claims reported to the attorney in those communications from all discovery. Such facts are still discoverable through other discovery tools like depositions of the hospital's employees. Thus, for example, if a physician employee had admitted fault to the attorney investigator, the communication of the fault (and any recording of it, written or oral) would be protected. The privilege, however, would not prevent plaintiff's counsel from deposing the physician employee and asking whether he was at fault. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney...."). Indeed, this appears to be what the hospital understood to be the limit of its claimed privilege, since it gave Ms. Collins a lengthy list of employees involved in her husband's care, presumably so she could depose them. That the deposition process would be more expensive, both in time and money, especially given the number of physicians and other employees involved in Mr. Collins' care, does not change this principle.

██ Unlike other, qualified privileges, such as the work-product privilege, great need and hardship cannot even begin to obviate the absolute attorney-client privilege. *See St. Luke Hospitals*, 160 S.W.3d at 777. Indeed, that case contrasted the qualified protection afforded to work product with the "absolute" protection of the attorney-client privilege, which is "not discoverable even when the information is essential to the underlying case and cannot be obtained from another source." *Id.*

Ms. Collins also complains that the hospital is using business policies to collect the statements of employees and then claim that the statements were collected in anticipation of litigation or otherwise in furtherance of the rendition of professional legal services. She notes that the docu-

ments in question were generated pursuant to written policies and procedures of the hospital. Ms. Collins is correct that the attorney-client privilege applies only to "confidential communication[s] made for the purpose of facilitating the rendition of professional legal services to the client," KRE 503(b) and not to other services an attorney might provide, such as business advice.

But the fact that the communications were collected pursuant to hospital policy does not make them business advice or otherwise remove them from the privilege. The policies in question were promulgated by the hospital's in-house lawyer and relate to the collection of information after a potentially tortious event in the hospital. No doubt, any death in a hospital creates the risk of litigation.[2] The attorney-client privilege is not contingent on actual or threatened litigation. Statements made by a hospital's employees in such circumstances are made as part of a comprehensive program by which the hospital seeks to determine, with the assistance of counsel, the best legal strategy to pursue in regard to the tort that may have happened on the hospital's premises. The policies here were not general business policies, such as those aimed at reducing waste or hiring qualified employees; rather, they were promulgated by the hospital's in-house *lawyer* for the purpose of assessing the risk of and preparing for possible litigation.

Ms. Collins complains specifically that the statements included in the documents could not have been made in furtherance of legal services because the policies were aimed at avoiding discovery. She points to the deposition testimony of John Hensen, the CEO of the hospital, in which he stated: "Because unfortunately, the Commonwealth of Kentucky has deemed that type of information to be discoverable if it's submitted to the Joint Commission and in my professional opinion, I can't put the hospital at harm by allowing that to be discoverable...."

Ms. Collins claims that the statements in this case fall outside the privilege because the policies under which they were collected are aimed not at obtaining legal advice but at avoiding discovery. While this was inartfully stated by the CEO, the very purpose of allowing a privilege for statements made in confidence to an attorney or his representative is so that those statements cannot be discovered. In his statement, he refers to documents turned over to the Joint Commission, which is a non-profit hospital accreditation organization, as being discoverable. This is exactly correct, since the Joint Commission is a third party, and revelation of the statements to a third party who is neither a representative of the client or the attorney would amount to a waiver of the privilege. *Lexington Public Library v. Clark*, 90 S.W.3d 53, 61 (Ky.2002). That the policy was aimed at collecting statements that were to be kept confidential and not disclosed to the Joint Commission actually supports a finding that the privilege applies.[3]

---

**2.** The parties argue over the significance of Ms. Collins' attorney's involvement the day after Mr. Collins' death. The hospital claims he was investigating the case for Ms. Collins and thus any response, such as having its own attorneys investigate the matter, tends to show entitlement to the writ. Ms. Collins answers this claim by stating that the attorney was simply helping her find her son and deal with administrative matters. Regardless, whether the attorney was investigating the matter for possible litigation is of little or no import in this case, largely because unexpected deaths in hospitals almost always raise the specter of litigation.

**3.** At the Court of Appeals, Ms. Collins argued that the statements in question were collected to be sent to the Joint Commission as part of

■ None of this is to say that the hospital has shown that the privilege does apply to the documents in this case. While a claim of privilege should be presumed to be proper until challenged by the party seeking the materials, Ms. Collins has challenged the hospital's claim at every turn. And "[d]espite the historic and modern sanctity of the attorney-client privilege, not all communications between an attorney and a client are privileged, and [thus] the burden is on the party claiming the privilege to prove that it exists as to the communications so claimed." *St. Luke Hospitals,* 160 S.W.3d at 775. The burden of establishing the privilege thus falls solely on the hospital.

■ And whether the privilege applies is a mixed question of law and fact that is "often reviewed de novo." *Clark,* 90 S.W.3d at 62. Thus, rather than deferring to the Court of Appeals, which found that the documents were privileged, this Court must independently examine whether the hospital has shown at this time that the privilege applies.

Unlike in the federal courts, the attorney-client privilege in Kentucky is governed by the Rules of Evidence, specifically KRE 503. The basic rule of the privilege allows a client "to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client." KRS 503(b). The communication must be "[b]etween the client or a representative of the client and the client's lawyer or a representative of the lawyer," "[b]etween the lawyer and a representative of the lawyer," "[b]etween representatives of the client or between the client and a representative of the client," or "[a]mong lawyers and their representatives representing the same client." KRE 503(b)(1)–(5).[4]

Under KRE 503, employees of a client can be treated as "representatives" of the client. So, generally speaking, and assuming they meet a few additional requirements, confidential statements made by a client's employees to the client's legal counsel are protected as much as statements by the client itself. Likewise, statements by the lawyer to the client or to the client's employees, again assuming they meet the additional requirements, are also protected.

Two of the additional requirements to establish the privilege apply in every case. First, the statements must actually be confidential, meaning they are "not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE 503(a)(5). Second, the statements must be made for the purpose of obtaining or furthering the rendition of legal services to the client. KRE 503(b).

When statements by employees of a client are involved, still more requirements

---

a review process. She also claimed that the statements were *required* to be sent to the Joint Commission. Either of these facts would undermine the privilege, which depends in part on the communication not being intended for disclosure to third parties. The hospital, of course, disputes this characterization of the statements, claiming that they were prepared only for use by legal counsel and that disclosure to the Joint Com-

mission was encouraged but optional. Ms. Collins appears to have dropped this argument on appeal to this Court.

4. Communications from a client or a lawyer to another lawyer in the action concerning a matter of common interest are also covered, though that does not appear to be at issue in this case.

must be met. Specifically, the privilege only applies if the employee is a "representative of the client" for purposes of the privilege. A client's employee can be a representative of the client in making or receiving a confidential communication only if he or she does so "[i]n the course and scope of his or her employment," the statement is "[c]oncerning the subject matter of his or her employment," and the statement is made "[t]o effectuate legal representation for the client." KRE 503(a)(2)(B)(i)-(iii). The first two requirements are substantial limitations on the privilege. For example, a statement made by a former employee after the employment relationship has ceased is not covered because the statement is not made in the course or scope of employment as required by KRE 503(a)(2)(B)(i). *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook* 5.05[9], at 359 (4th ed.2003).

The limitation under KRE 503(a)(2)(B)(ii) is even more important. It distinguishes between employees who are "mere eyewitnesses" to an alleged tort by happenstance, Lawson, *supra*, § 5.05, at 358 (quoting 2 Mueller and Kirkpatrick, *Federal Evidence* § 189 (2d ed.1994)), and those who are witnesses because of their employment (and, more often than not, are alleged to have been involved in the tortious conduct). As Professor Lawson notes, this requirement is perhaps the most important because it "distinguishes between those employees who qualify as clients and those who must be viewed as mere witnesses." *Id.* The distinction is perhaps best illustrated by an example used in the commentary that was included when the rules were first proposed in the 1990s:

> Suppose, in a suit for personal injuries sustained when the client's truck entering the client's loading yard struck a pedestrian, the lawyer for the client interviews the driver of the truck and a secretary who happened to be looking out the window when the accident occurred. The interview with the driver would be privileged but not so the interview with the secretary because the accident was not a matter within the course and scope of her employment.

Evidence Rules Study Committee, Commentary to Proposed KRE 503(a)(2), Final Draft (November 1989), *quoted in Lexington Public Library v. Clark,* 90 S.W.3d 53, 60 (Ky.2002).

Analogizing to the hospital setting, when a physician and a nurse are involved in caring for a patient who later brings a claim against the hospital for the care provided by the physician and the nurse, statements made by the physician and the nurse to the hospital's counsel while preparing for the litigation would meet the requirement that they concern the subject matter of the employment. But if a second nurse who was not involved in the patient's care but just happened to be in that part of the hospital saw the critical moment of alleged negligent care, any statement by the second nurse to the hospital's counsel about the event would not be protected because the statement would not concern the subject matter of the nurse's employment. The second nurse was not employed in caring for the patient and was merely a witness to what happened.

The difficulty in applying these standards to this case stems from the fact that we simply do not know what is included in the documents in question. The record shows only the names of the two documents and their attachments, the policies under which the documents were produced, and the names of the people who produced the documents. While it is *highly likely* that the documents include pro-

tected statements by employees who were involved in Mr. Collins' care and protected legal advice from the hospital's legal counsel, both of which fall within the core of the privilege's protection, it is not at all clear that these types of statements are the only things included in the documents.

For example, the hospital has noted dozens of employees who may have been involved in Mr. Collins' care, but it has not established in the record that all the statements in the documents were by such employees. Yet for a statement to be protected by the privilege it must actually concern the employee's employment, as described above. It is entirely possible that some of the statements in the documents were made by mere eyewitnesses who were not involved in Mr. Collins' care or whose statements may have concerned subjects outside the scope of their employment.

Moreover, it appears that at least part of one of the documents—the schematic of the hospital floor where Mr. Collins died— is not covered by the attorney-client privilege, because it consists merely of a record of the physical location of the event, which is not a "statement" by an employee. Unless the schematic contains more than a record of the floor plan, it is discoverable in the ordinary course; and even if the schematic in question has employee statements recorded on it, a "clean" copy of the schematic likely exists and is discoverable. Other portions of the documents could similarly fall outside the privilege.

As noted above, the claimant of a privilege bears the burden of establishing the privilege. In a writ action, which is an original action at an appellate court, this requirement is all the more important because the trial court's record is unavailable in the writ action, the record of which consists only of what the parties have included with their filings. *See Clark*, 90

S.W.3d at 56. In some cases, there is no dispute about the nature of the documents or statements sought in discovery. For example, in *St. Luke Hospitals*, there was no question that the documents in question consisted of interviews with the nurses involved in the plaintiff's care conducted by the lawyer's representative that had been reduced to writing. 160 S.W.3d at 774. When such clarity about the statements in question is evident, it is far easier to decide whether the privilege applies and, when it does, to issue a writ. *See id.* at 776–77 (finding the privilege applicable and issuing the writ).

██ But we have declined to issue a writ to protect a claimed privilege where "the record before us [wa]s insufficient to permit a determination whether any or all of the remaining ten communications still at issue are subject to the lawyer-client privilege." *Clark*, 90 S.W.3d at 63. In that case, the trial judge had actually reviewed the documents *in camera* and found that most of them were not covered by the privilege. Yet, when the claimants sought a writ, none of the documents reviewed by the trial judge were filed in the writ action's record, nor did the trial judge's "order describe the documents or recite any factual bases for his conclusion that [the documents were not covered by privilege]." *Id.* at 56. Apparently, the writ petition itself failed to describe the documents or lay out factual bases for the privilege.

That is exactly what has transpired in this case, except that the hospital never sought an *in camera* review by the trial court. All we have to go on is the hospital's argument about the content of the documents. The hospital never directly asserts that the documents contain only protected employee statements (i.e., made in the scope of and concerning the employment) and legal advice from counsel.

For example, the hospital notes that the "Investigative Case Report includes the attorney's analysis of the sentinel event, a root cause analysis, and other supporting documents." From this, the hospital concludes: "Therefore, the documents contain both communications made by the attorney and by the hospital employees, as well as the attorneys' legal advice to [the hospital]." While that conclusion is very likely true in light of what the attorneys were doing (investigating the circumstances of a death that was likely to result in litigation), it does not necessarily logically follow from the description of the items included in the report. It is unclear what a "root cause analysis" or "supporting documents" actually are or what they contain. Ultimately, the hospital does not come out and say that the documents contain only privileged employee statements and legal advice, and instead relies on a logical inference that the documents contain those things.

Similarly, the hospital claims that because the Risk Occurrence Report was prepared pursuant to the hospital's standing policy by "the assistant coordinator in the hospital unit where Mr. Collins was a patient ... [and] was then forwarded to the Hospital's Risk Manager," it was covered by attorney-client privilege. But it is not clear from this description what the assistant coordinator prepared. Was the document a collection of employee statements? If so, which employees? Or was the document merely the coordinator's second-hand account of the events? (If the latter is the case, then it would at most be entitled to the work-product privilege, as was originally claimed.)

Without more certainty about the content of those documents, a reviewing court cannot determine whether any statements are even in the documents or whether any statements are covered by the privilege.

Thus, this Court concludes that the hospital has not at this point met its burden to establish its entitlement to the privilege.

This is not to say that the privilege does not apply to any of the statements. Nor is it to say that the hospital's burden is a heavy one should it further seek to establish the privilege at the trial court. Parties asserting privileges have numerous ways to establish the existence of the attorney-client privilege when an opposing party challenges its existence.

One common method is an *in camera* review by the trial court of the documents in question. This was the method employed in *Clark*, 90 S.W.3d at 63. But this method can have its limitations. For example, it requires the trial court to "describe the documents" or "recite any factual bases" supporting its decision to facilitate appellate court review. *Id.* More importantly, *in camera* review can overly burden a trial court, especially in litigation where many documents are claimed to be privileged. Thus, instead of *in camera* review, a party claiming the privilege could produce a detailed privilege log with descriptions of the documents sufficient to establish the existence of the privilege (i.e., more than their titles). Or a party could make an "offer of proof" or proffer, like the process in KRE 105(b), describing the documents (without going into the content of any statements or legal advice they contain, of course).

How a party proceeds is up to it, unless the trial judge prefers one approach over the others or declines to allow the use of one in a given case. That call falls within the trial court's sound discretion. The only requirement is that when challenged, the party claiming the privilege must do more than merely assert the privilege. It must provide the court with sufficient information to show the existence of the

elements of the privilege and to allow review of that decision by higher courts.

Thus, the hospital still has the opportunity in the future to establish that the privilege covers the documents or at least parts of them.[5]  But at this point, this Court concludes that the hospital has failed to show that the documents are actually covered by the privilege.  As such, the Court of Appeals erred in finding that the privilege applied and thus abused its discretion in issuing the writ.

### III.  Conclusion

Because the Baptist Regional Medical Center has not yet shown entitlement to the attorney-client privilege, meaning the writ was erroneously granted, the Court of Appeals' order is reversed.  All further proceedings on the issue of privilege shall be consistent with this Opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCOTT and VENTERS, JJ., concur.  SCHRODER, J., not sitting.

---

**5.**  It is worth noting that if the privilege applies to only some of the statements or parts of the documents, the statements or parts of documents not covered are nevertheless properly discoverable.