RENDERED: JULY 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0074-MR

MARY B. BECKER                                                       APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ERIC JOSEPH HANER, JUDGE
ACTION NO. 18-CI-007275


BAPTIST HEALTH MEDICAL
GROUP, INC., D/B/A BAPTIST
MEDICAL ASSOCIATES                                                   APPELLEE


OPINION
REVERSING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ACREE AND McNEILL, JUDGES.

ACREE, JUDGE: Appellant, Mary Becker, appeals the Jefferson Circuit Court's

December 14, 2021 Order granting summary judgment in favor of Appellee,

Baptist Health Medical Group (Baptist), and the Jefferson Circuit Court's February

2021 Order declining to compel Appellee to produce certain documents. After

careful review, we reverse.

## BACKGROUND

Becker is an Advanced Practice Registered Nurse (APRN) who developed a sizeable client base over her twenty-five-year career. In her practice, she focused on obstetrics and gynecology. As she transitioned from one employer to another, many of her clients moved with her and many indicated they would use her services until she retired. Over the years, Becker informed her clients that when she retired, she would give them extensive notice and recommend a new provider so their care and treatment could go on uninterrupted.

In July 2016, Baptist's acquisition of Becker's employer resulted in absorption of the practice into Baptist's network. According to Becker, she signed a three-year contract to work for Baptist that would engage her until July 1, 2019. Becker sought to discover Baptist's copy of this contract, but Baptist never provided a copy and denied its existence. Baptist claims it never had a contract with Becker or any other APRN.

On April 12, 2018, Becker tripped and fell in Baptist's parking lot and suffered serious injuries, including a concussion, occipital and suborbital fractures, and a broken left hand. She was taken to the ER for these injuries. Becker's supervisor, Patty Hornung, informed Operations Manager Melanie Woosley about

Becker's injuries and Hornung kept Chris Sizemore[1] apprised of Becker's workers' compensation claim. Becker alleges Baptist limited her time off to three months, with Baptist implying anything longer would not work for the hospital. Initially, Becker's doctor wanted her to wait six months before returning to work but, at Becker's request and with pressure from Baptist, Becker returned after three months. The Closure Report from the workers' compensation carrier is dated July 11, 2018. Before that date and her release to return to work, Becker received erroneous, but disheartening, news about her health.

During Becker's recovery, her doctors sent her to an oncologist to determine if she had cancer. Several of Becker's test results indicated she may. On June 13, a biopsy was performed, and, on June 19, Becker received a report from her oncologist indicating a generalized metastasis which more often than not has a negative prognosis. Baptist claims Becker herself incorrectly interpreted the report, while Becker indicates she and her doctor read the report to indicate she had metastasized cancer. Nevertheless, Becker was distraught because she believed she had terminal cancer "everywhere." She spoke with Hornung about the news and told Hornung she needed to spend more time with her family.

---

[1] Chris Sizemore was the Assistant Vice President of Operations. Becker alleges Sizemore was solely focused on Baptist's bottom line and increasing its employees' productivity.

Hornung interpreted this comment as meaning Becker did not want to continue working. She told Woosley that Becker "had gotten bad test results and that she was going to spend time with her family." (Record (R.) at 811-12). According to Hornung, Becker never uttered the words "I quit." And, shortly after this, Hornung left for a two-week vacation. Thereafter and until the end of her period of workers' compensation leave, Becker's communication with Baptist employees was minimal at best.

Woosley began preparations for Becker to no longer work at Baptist; as Operations Manager, she was concerned about how Baptist would service Becker's large client base. Around this time, someone in Baptist's Human Resources Department began asking Woosley whether Becker had given anyone a resignation letter and whether Becker was quitting or retiring; the answer would determine how Becker was offboarded. Woosley had nothing in writing from Becker and indicated she did not know whether Becker quit or was retiring. On July 5, Becker learned she did not have any form of cancer or terminal condition.

On July 9, Baptist's Human Resources again inquired of Woosley about a resignation letter from Becker. Hornung, now back from vacation, texted Becker to ask for a resignation letter identifying what would be her last day of work. Becker informed Hornung she did not have cancer, had not resigned or retired, and was ready to come back to work following removal of workers'

compensation restrictions. Hornung relayed this message to Woosley. Woosley asked Becker to stay on workers' compensation until September. Notwithstanding these events, Hornung processed the payment for Becker's DEA License renewal, a requirement for Becker's continued employment with Baptist.

When Woosley told Sizemore that Becker would be returning to work, he responded that he would not allow her to return. He said, "So my position was that we were – we were not going to allow her to return, that she had resigned of her own volition, and my reasoning was that – again, my thinking was that her patients would be redistributed among the existing providers." (R. at 792.) On July 25, Woosley relayed Sizemore's message to Becker and told her she would not be allowed to return, despite Becker having already scheduled appointments with her clients well into November.

On August 24, nearly two months after Becker informed Baptist she no longer had any health problems, Baptist sent the following to a large portion of Becker's client base:

> This letter is to inform you that your provider, Mary Becker, APRN, has made the difficult decision to leave employment with Baptist Health Medical Group Louisville Physicians for Women. While she truly enjoyed being involved in the care of each of her patients over the years, the decision to step away from patient care was necessary, *for reasons related to her personal health.* Her last day seeing patients in the office was June 21, 2018.

(R. at 890) (emphasis added).

Becker initiated this lawsuit in December 2018. She alleged breach of contract, tortious interference, workers' compensation retaliation, age and disability discrimination, and defamation. Becker served Baptist with discovery requests. One of these requests asked Baptist to produce Becker's employment contract. Baptist did not produce it and the circuit court entered an order requiring Baptist to make a good faith effort to locate and produce the document. Baptist indicated it was not aware of any contract with Becker. Becker requested other contracts Baptist had with some of its doctors, but Baptist refused to produce those. Additionally, Baptist refused to turn over "25 email communications made between Baptist employees but at the direction of litigation counsel[.]" (Appellee's brief, pp. 10-11.)

Because of Baptist's discovery responses, Becker filed a motion to compel and a subsequent motion for sanctions. The circuit court denied the motion, determining the contracts Becker requested were irrelevant and the emails were protected by the attorney-client privilege. Baptist never produced the contracts and did not produce the twenty-five emails between Baptist employees.

In October 2021, Baptist filed a motion for summary judgment. On December 10, 2021, the circuit court granted summary judgment in favor of Baptist. Becker now appeals.

# ANALYSIS

*Preservation Issues.*

Before reaching the merits of this case, we address Baptist's contentions that Becker did not preserve any of her arguments on appeal. While Becker did fail to include a preservation statement at the beginning of her Argument section, the purpose of a preservation statement is "so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

For purposes of this appeal, "[w]e are convinced that the failure to comply with the rule is not fatal . . . where the propriety of summary disposition was clearly joined at every stage of the proceeding." *Cornette v. Holiday Inn Exp.*, 32 S.W.3d 106, 109 (Ky. App. 2000). Becker properly challenged the motion for summary judgment to preserve an appeal of the circuit court's ruling on that motion. We emphasize, however, failure to substantially comply with the rules justifies striking a brief. *See Stowe v. Realco LLC*, 551 S.W.3d 462, 465 (Ky. App. 2018). We strongly encourage Becker to include a preservation statement in her brief in the future, regardless of how obvious it is that an appeal is properly preserved.

*Discovery Order*

The circuit court entered its Discovery Order dated February 8, 2021, ruling that "Becker has not persuaded the Court that Baptist's assertion of attorney-client privilege as to certain documents is incorrect."  As worded, the ruling indicates the circuit court was persuaded by Baptist's argument that it was Becker's burden to defeat Baptist's assertion of privilege.  Baptist presents that argument again to this Court, quoting a Kentucky Supreme Court opinion out of context for the proposition that a "claim of privilege should be presumed proper until challenged by the party seeking the materials."  (Appellant's brief, p. 11 (quoting *Collins v. Braden*, 384 S.W.3d 154, 161 (Ky. 2012).)  That partial quote must be read in its context.

The fuller quotation reads:  "*None of this is to say that the hospital has shown that the privilege does apply to the documents in this case.  While* a claim of privilege should be presumed to be proper until challenged by the party seeking the materials, *Ms. Collins has challenged the hospital's claim at every turn.*"  *Collins*, 384 S.W.3d at 161 (emphasis added).  It does not take much to challenge the initial claim of privilege, if such challenge is not waived by delay or inaction.  *See Commonwealth v. Steadman*, 411 S.W.3d 717, 724 (Ky. 2013) (an issue can be waived through inaction).

"Because privileges operate to exclude relevant evidence, '[t]he party asserting the privilege has the burden to prove the privilege applies.'" *Stidham v. Clark*, 74 S.W.3d 719, 725 (Ky. 2002) (quoting *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990)).  But, after objection to the initial claim, "[n]either a blanket assertion of the privilege nor a bare showing that the recipient of the communication is [one whose relationship with the party asserting the privilege is recognized as engaging in privileged communication] would be sufficient."  *Id*.

We have our Supreme Court's quite clear instruction regarding how Baptist should have proceeded, as it set forth in *Collins v. Braden*.  In fact, the real party in interest in *Collins* was a Baptist affiliate.  In *Collins*, the Court said:

> Parties asserting privileges have numerous ways to establish the existence of the attorney-client privilege when an opposing party challenges its existence.
>
> One common method is an *in camera* review by the trial court of the documents in question.  This was the method employed in *Clark,* 90 S.W.3d at 63.  But this method can have its limitations.  For example, it requires the trial court to "describe the documents" or "recite any factual bases" supporting its decision to facilitate appellate court review. *Id.*  More importantly, *in camera* review can overly burden a trial court, especially in litigation where many documents are claimed to be privileged.  Thus, instead of *in camera* review, a party claiming the privilege could produce a detailed privilege log with descriptions of the documents sufficient to establish the existence of the privilege (i.e., more than their titles).  Or a party could make an "offer of proof" or proffer, like the process in

KRE[2] 105(b), describing the documents (without going into the content of any statements or legal advice they contain, of course).

How a party proceeds is up to it, unless the trial judge prefers one approach over the others or declines to allow the use of one in a given case. That call falls within the trial court's sound discretion. The only requirement is that when challenged, the party claiming the privilege must do more than merely assert the privilege. It must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts.

Thus, the hospital still has the opportunity in the future to establish that the privilege covers the documents or at least parts of them.[5] [Here footnoting that the remaining parts would be discoverable.] But at this point, this Court concludes that the hospital has failed to show that the documents are actually covered by the privilege.

*Collins*, 384 S.W.3d at 164-65. We conclude the hospital again failed in the instant case to show that the documents are covered by the privilege.

In this case, Baptist did not submit the emails to the circuit court for *in camera* review nor did it make an offer of proof – the first and last of these options. Nor did Baptist's actions satisfy the second option, a detailed privilege log.

What Baptist submitted to the circuit court did not include "descriptions of the documents sufficient to establish the existence of the privilege

---

[2] Kentucky Rules of Evidence.

(i.e., more than their titles)." *Id.* at 164.  The "privilege log" Baptist submitted includes the "Date," "Author," "Recipient," "Subject," and "Privilege" – nothing more.  The information in the "Subject" block is the "Re:" line from the emails and none of the descriptions of the "Subject" contain information "sufficient to establish the existence of the privilege."[3]

Furthermore, Baptist admits in its brief that these "25 email communications [were] made between Baptist employees but at the direction of litigation counsel[.]"  (Appellee's brief, p. 11.)  On their face, communications between a client's employees, without more of an explanation, will not qualify as privileged.

To explain attorney-client privilege better, we again quote our Supreme Court.  "Kentucky's testimonial privileges are codified in Article V of the Kentucky Rules of Evidence.  KRE 501 includes no provision for common law development of testimonial privileges:

> *Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky,* no person has a privilege to:
>
> (1) Refuse to be a witness;

---

[3] The twenty-five (25) emails claimed as privileged communications have only nine (9) different "Subjects" and they state in their entirety:  "Mary Becker APRN" (6); "Becker v. Baptist Discovery CONFIDENTIAL" (5); "Becker v. Baptist discovery" (3); "Mary Becker Offboarding" (2); "Mary Becker" (2); "Medical Records Agmt – Baptist" (2); "Mary Becker call" (2); "Mary Becker adv." (2); and "how does this look??" (1).  No judge could determine from these descriptions whether the attorney-client privilege attaches.

-11-

(2) Refuse to disclose any matter;

(3) Refuse to produce any object or writing; or

(4) Prevent another from being a witness or disclosing any matter or producing any object or writing. (Emphasis added.)"

*Stidham*, 74 S.W.3d at 723-24. KRE 501 is, therefore, the starting point. If a party wants to claim the privilege, he will have to find authority for it in KRE 503. As for the substance of the privilege, this is what the rule says:

> (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client:
>
> (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer;
>
> (2) Between the lawyer and a representative of the lawyer;
>
> (3) By the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
>
> (4) Between representatives of the client or between the client and a representative of the client; or
>
> (5) Among lawyers and their representatives representing the same client.

KRE 503(b). Baptist claims the privilege as to 25 emails "between Baptist employees[.]" The only way the privilege applies is if those employees fit the definition of a type of *person* the Rule allows to engage in privileged communications and that the *communication* satisfies the requirement that it be "confidential" as defined by the Rule.

There is nothing in the record even suggesting the "Baptist employees" fit the definition of "Client" or "Lawyer[.]" KRE 503(a)(1), (3). Nor will Baptist's assertion that the employees' communications were "at the direction of litigation counsel" make either party to the emails a "Representative of the lawyer[.]" KRE 503(a)(4).

A "Baptist employee" might qualify as a "Representative of the client[.]" KRE 503(a)(2). But the Rule requires they be invested with specific authority before they will satisfy the definition.

The Rule defines "Representative of the client" as:

(A) A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or

(B) Any employee or representative of the client who makes or receives a confidential communication:

   (i) In the course and scope of his or her employment;

   (ii) Concerning the subject matter of his or her employment; and

-13-

(iii) To effectuate legal representation for the client. KRE 503(a)(2). Such a determination is fraught with necessary factual questions to be answered; Baptist offered no evidence that the "Baptist employees" are "Representatives of the client" that might have aided the circuit court in determining whether the privilege applies. And there is more.

It will not be enough if only one of the parties qualifies as a "Representative of the client" because the privilege only applies to communications "[b]etween representatives of the client[.]" KRE 503(b)(4). If only one of the parties to the email is a "[r]epresentative of the client[,]" that will not be enough to affirm a finding that the privilege applies.

Finally, for the privilege to attach, each email for which the privilege is claimed must be a confidential communication. "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." KRE 503(a)(5).

We strictly construe KRE 503 in accordance with "the almost universally accepted rule that testimonial privileges are generally disfavored and should be strictly construed." *Stidham*, 74 S.W.3d at 722-23; *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005) ("The protection from

disclosure of privileged communications between an attorney and client is one of the foundation principles of Anglo-American jurisprudence. Where the privilege applies its breach undermines confidence in the judicial system and harms the administration of justice.").

At this stage, the record does not support Baptist's claim of attorney-client privilege. Even though *Collins v. Braden* was a review of this Court's grant of a writ, *Collins*, 384 S.W.3d at 156, the decision under review here is in the same posture as in that case and must be reversed. Our conclusion is the same as in *Collins*: "Because . . . Baptist . . . has not yet shown entitlement to the attorney-client privilege, . . . the [Jefferson Circuit Court's February 8, 2021] order is reversed. All further proceedings on the issue of privilege shall be consistent with this Opinion." *Collins*, 384 S.W.3d at 165.

## *Summary Judgment*

It should go without saying that Becker's opportunity to complete discovery was thwarted by the erroneous ruling on privilege. "[F]or summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts. Only if that opportunity was given do we reach the issue of whether there were any material issues of fact precluding summary judgment." *Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007). Consequently, it is not possible that Baptist has "show[n] that the adverse

party could not prevail under any circumstances" as to every claim. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Not knowing to a certainty whether Baptist, on remand, can establish the right to claim the privilege, and not knowing to a certainty what the emails might reveal if the privilege does not attach, puts this case in the same posture as any case in which the party was not given an adequate opportunity to complete discovery. "[B]ecause a premature summary judgment inevitably leads the record to be fatally incomplete, we do not address whether the . . . record supports granting summary judgment . . . ." *Bowlin Group, LLC v. Rebennack*, 626 S.W.3d 177, 187 (Ky. App. 2020) (citing *Suter*, 226 S.W.3d at 842).

## CONCLUSION

For the aforementioned reasons, we reverse and remand this case to the circuit court for further proceedings consistent with this Opinion.

ALL CONCUR.

-16-

BRIEFS FOR APPELLANT:

Laura E. Landenwich
Abigail V. Lewis
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Abigail Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Donna King Perry
Alina Klimkina
August Johannsen
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Alina Klimkina
Louisville, Kentucky