RENDERED: DECEMBER 18, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0154-MR

BAPTIST HEALTHCARE SYSTEM, INC.            APPELLANT
D/B/A BAPTIST HEALTH PADUCAH

| | |
|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>NO. 2024-CA-1094<br>MCCRACKEN CIRCUIT COURT NO. 23-CI-00329 |

HONORABLE WILLIAM ANTHONY            APPELLEE
KITCHEN , JUDGE, MCCRACKEN
CIRCUIT COURT

AND

MARIETTA GELANIE JONES            REAL PARTY IN INTEREST /
           APPELLEE

AND

2025-SC-0165-MR

MARIETTA GELANIE JONES            CROSS-APPELLANT

| | |
|---|---|
| V. | ON APPEAL FROM COURT OF APPEALS<br>NO. 2024-CA-1094<br>MCCRACKEN CIRCUIT COURT NO. 23-CI-00329 |

HONORABLE WILLIAM ANTHONY            CROSS-APPELLEES
KITCHEN, JUDGE, MCCRACKEN
CIRCUIT COURT; AND BAPTIST
HEALTHCARE SYSTEM, INC. D/B/A
BAPTIST HEALTH PADUCAH

## OPINION OF THE COURT BY JUSTICE BISIG

### AFFIRMING

Baptist Healthcare System, Inc. d/b/a Baptist Health Paducah ("BHP") appeals from the Court of Appeals' denial in part of its petition for a writ prohibiting the McCracken Circuit Court from enforcing its discovery orders. Marietta Gelanie Jones cross-appeals from that portion of the Court of Appeals' decision which granted BHP's petition. After a thorough review of the record presented and the applicable law, we affirm.

### FACTUAL & PROCEDURAL BACKGROUND

On May 2, 2022, Jones was admitted to BHP's hospital for symptoms associated with liver disease. During her stay, Jones fell while walking to the bathroom. At the time of the fall, she was accompanied by one BHP caregiver. Jones' medical condition at the time left her in an altered mental state and she therefore has no recollection of the fall. On the following day, caregivers discovered that Jones had a fractured hip, and she went underwent surgery on May 4, 2022. She was discharged a week later.

Jones filed suit against BHP alleging negligence in failing to prevent or appropriately respond to her fall. Jones propounded a discovery request seeking "any and all incident reports" relative to her fall. BHP identified an 8-

2

page Incident Report[1] and a 40-page Root Cause Analysis[2] as responsive to the discovery request, but declined to produce them on grounds they are protected by the federal patient safety work product privilege set forth in 42 U.S.C. § 299b-22(a) and Kentucky's peer review privilege set forth in Kentucky Revised Statutes ("KRS") § 311.377(2). Briefly and by way of background, the federal privilege exempts from discovery materials related to a covered medical entity's retrospective review and reporting of medical errors to a patient safety organization. The state privilege exempts from discovery materials related to a covered medical entity's retrospective review of the professional conduct of its healthcare providers.

Jones filed a motion to compel production of the Incident Report and Root Cause Analysis, and BHP responded with an affidavit and privilege log to support its privilege claims. The trial court ultimately ordered the documents to be produced for an *in camera* review. After *in camera* review, the trial court concluded that BHP was mandated by law to prepare both the Incident Report and the Root Cause Analysis regarding the fall incident. The trial court thus

---

[1] In its briefing, BHP refers to the Incident Report as an "Internal Report." At other times, the parties refer to the document as a "SAFE Report." However, in its privilege log BHP referred to the document as the "Incident Report," and we therefore use that description for ease of reference.

[2] A "root cause analysis" is generally understood to be "any undertaking to identify the source of shortcomings or other unintended consequences of any program, enterprise or effort." *Univ. of Kentucky v. Bunnell*, 532 S.W.3d 658, 665 n.6 (Ky. App. 2017). The term is not unique to the medical field. *Id.* However, hospitals, patient safety organizations, and other medical entities use the term to refer to their processes of retrospectively reviewing and analyzing medical errors in order to determine both what caused the error and better practices to avoid such errors in the future and thereby improve patient safety overall.

ordered BHP to produce the entirety of the Incident Report. It also ordered BHP to produce the Root Cause Analysis, but allowed BHP to redact those portions of the Root Cause Analysis that are information that would not normally be contained in state-mandated reports as it concluded those portions fell within the federal patient safety work product privilege. Finally, the trial court also considered the state peer review privilege and concluded it did not apply to the Incident Report or the unredacted portions of the Root Cause Analysis because those documents contain information that is independently discoverable insofar as they include facts relating to Jones' fall. The trial court noted that Jones' medical record includes no information as to where or how she fell, her resulting injuries or surgery, or assistance and treatment she was provided after the fall. The trial court thus concluded that to the extent the Root Cause Analysis referenced such information, Jones should be able to access that information in order to balance BHP's root cause analysis protections with Jones' need for that information in the underlying litigation.

BHP petitioned the Court of Appeals for a writ prohibiting the trial court from enforcing its discovery order. The Court of Appeals found that the Incident Report was not privileged under the federal or state privileges because that report "triggered" BHP's root cause analysis, and thus BHP would have created the document even absent a root cause analysis. However, the Court of Appeals disagreed with the trial court that Jones was entitled to the factual portions of the Root Cause Analysis, noting that the mere lack of information

4

about the fall in Jones' medical records did not override the federal privilege afforded to the Root Cause Analysis. We pause to note however that the Incident Report contains factual information. The Court of Appeals therefore granted a writ prohibiting the trial court from requiring production of the factual portions of the Root Cause Analysis, but otherwise denied BHP's requested relief.

The current appeal involves cross-requests for relief. BHP now appeals the denial of its request that the writ also prohibit the trial court from ordering production of the Incident Report, while Jones appeals the Court of Appeals' grant of a writ protecting the Root Cause Analysis from disclosure.

**ANALYSIS**

As we have often noted, a writ provides extraordinary relief and is thus disfavored in our jurisprudence. *Jewish Hosp. v. Perry*, 626 S.W.3d 509, 512 (Ky. 2021). We therefore apply a "cautious and conservative [approach] both in entertaining petitions for and in granting such relief." *Id.* (quoting *Henderson Cnty. Health Care Corp. v. Wilson*, 612 S.W.3d 811, 817 (Ky. 2020)).

Writs may be granted in two classes of cases: first, where the lower court is acting beyond the scope of its jurisdiction; and second, where "the lower court erred and no adequate remedy may be had through appeal." *Id.* In the second class of cases, the petitioner generally must also show "that allowing the error to stand will result in irreparable injury." *Id.* at 513. However, a writ may also be granted in "certain special cases" within this second class even absent a showing of irreparable harm, provided the petitioner demonstrates

5

that "a substantial miscarriage of justice will result if the lower court is proceeding erroneously, and correction of the error is necessary and appropriate in the interest of orderly judicial administration." *Collins v. Braden*, 384 S.W.3d 154, 158 (Ky. 2012) (quoting *Bender v. Eaton*, 343 S.W.2d 799, 801 (Ky. 1961)).

The discovery dispute at issue here involves an order requiring a party to produce documents the party contends are privileged. As such, this matter constitutes the type of "certain special case" in which a writ may be granted. As we have previously noted,

> violation of a privilege satisfies both the requirement of no adequate remedy by appeal, "because privileged information cannot be recalled once it has been disclosed," and the substitute requirement in "special cases" that the administration of justice would suffer. Thus, remedy by a writ of prohibition is available to a petitioner claiming the potential violation of a privilege.

*Id.* at 158 (citations omitted).

Having thus determined that the relief of a writ is available, we turn to consider the merits. In considering an appeal from a lower court's ruling on a writ, we review the lower court's legal conclusions *de novo*, while we review its factual findings for clear error. *Perry*, 626 S.W.3d at 512. However, because the lower court ultimately has discretion in determining whether or not to issue a writ, we review its final decision for abuse of discretion. *Id.*

### I. The Federal Patient Safety Work Product Privilege Applies To The Entirety Of The Root Cause Analysis, But Not To The Incident Report.

BHP first alleges the trial court erred in requiring disclosure of the Root Cause Analysis and Incident Report because both are protected by the federal patient safety work product privilege. That privilege is set forth in the federal Patient Safety & Quality Improvement Act ("PSQIA"). Under the PSQIA, medical providers may analyze and report medical errors to a patient safety organization, which then uses the collected information in an endeavor to learn from those errors and thereby improve the safety of healthcare. The provider's resulting work product from this analysis and reporting process is known as patient safety work product, which the PSQIA privileges from discovery in order to incentivize providers to participate in the program. *See Bunnell*, 532 S.W.3d at 665-66.

The PSQIA defines "patient safety work product" within the scope of its privilege in relevant part as "any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements" which "are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization" and "which could result in improved patient safety, health care quality, or health care outcomes." 42 U.S.C. § 299b-21(7)(A). Thus, under this definition, the patient safety work product privilege applies only if the information at issue 1) constitutes data, reports, records, memoranda, analyses, or written or oral statements, 2) was prepared by a provider for the purpose of reporting to a

7

patient safety organization, 3) was in fact reported to a patient safety organization, and 4) could result in improved patient safety, healthcare quality, or healthcare outcomes.[3]  Overall, this statutory scheme is intended to protect and encourage healthcare providers to review patient care and recommend positive improvements designed to improve healthcare.

Here, in support of its privilege claim BHP provided the trial court with the affidavit of Tracy Phillips, its Director of Patient Safety, demonstrating that the Root Cause Analysis satisfies each of these elements of the patient safety work product privilege.  The document is an analysis, and the statute specifically identifies "root cause analyses" as one type of document that may constitute protected patient safety work product.  *Id.*  Phillips' affidavit further offered that the Root Cause Analysis was prepared for the purpose of reporting to a patient safety organization, and was in fact reported to such an organization.  Finally, Phillips' affidavit also established that the Root Cause Analysis included, among other things, "detailed analysis of care processes, operational suggestions for process improvements, [and] key takeaways," demonstrating that the document could result in improved patient safety, healthcare quality, or healthcare outcomes.  Thus, the affidavit was sufficient to establish each of the required elements of the privilege asserted by BHP.

---

[3] Though not at issue here, the PSQIA also extends the privilege to certain materials that "are developed by a patient safety organization for the conduct of patient safety activities" or that "identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system."  *Id.*

Indeed, the trial court itself acknowledged that the Root Cause Analysis contains privileged information, but nonetheless ordered disclosure of other portions of the document involving "the factual information concerning Ms. Jones' fall." Notably, however, the PSQIA defines protected patient safety work product to include "reports, records, memoranda, analyses . . . or oral or written statements." The statute thus contemplates that the privilege will apply to the entirety of a protected document, not merely to certain portions of the document. Moreover, the statute includes no specific language suggesting that a party might obtain—even upon a showing of need for use in litigation—factual information contained in a document that otherwise constitutes protected patient safety work product.[4] Accordingly, because BHP demonstrated that the Root Cause Analysis is protected by the patient safety work product privilege, and because that privilege contains no exception for factual portions of otherwise privileged materials, we agree with the Court of Appeals that the trial court erred in directing BHP to disclose the factual portions of the Root Cause Analysis.

However, we agree with the trial court that the Incident Report does not fall within the scope of the patient safety work product privilege. We acknowledge that as with the Root Cause Analysis, Phillips' affidavit asserts that the Incident Report is a report prepared for and submitted to a patient

---

[4] While we thus conclude a party is not entitled to obtain the factual portions of a document otherwise within the scope of the patient safety work product privilege, we also note the party may nonetheless investigate and obtain the facts relevant to the incident at issue via other avenues of discovery, such as requests for production of other types of documents, interrogatories, and depositions.

safety organization. Notably, however, the PSQIA exempts from the patient safety work product privilege "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." 42 U.S.C. § 299b-21(7)(B)(ii). After passage of the PSQIA, the Department of Health and Human Services issued guidance explaining that such separate and thus non-privileged information would include "records generated or maintained as part of providers' existing mandatory information collection activities" pursuant to "external reporting or recordkeeping obligations." HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations, 81 Fed. Reg. 32,655, 32,657 (May 14, 2016). Thus, even where a provider has prepared and submitted a document to a patient safety organization, the document nonetheless is not protected by the patient safety work product privilege to the extent it includes information the provider was nonetheless otherwise obligated to record or report—for example pursuant to a state regulatory requirement. *Id.* ("[A]ny information that is prepared to meet any Federal, state, or local health oversight agency requirements is not [patient safety work product]."); *Baptist Health Richmond, Inc. v. Clouse*, 497 S.W.3d 759, 766 (Ky. 2016).

The record here makes plain that the Incident Report was generated as part of BHP's compliance with its state regulatory obligations to track incidents that occur in its facility. More particularly, 902 KAR 20:016 Section 3(4)(g) mandates that hospitals such as BHP have "[e[ffective procedures for tracking incidents" that occur at their facilities. BHP promulgated such a policy for falls

10

in particular, which includes a requirement that nursing staff complete a "SAFE Report prior to the end of the shift" in which a fall occurs. [5]

It is evident that the Incident Report constitutes such a report, and thus was created and maintained pursuant to BHP's external regulatory obligation to track incidents at its facility. Indeed, Phillips' affidavit specifically refers to the Incident Report as a "SAFE Report," the exact type of report required under BHP's falls policy. In addition, the privilege log BHP submitted to the trial court states that the Incident Report served to "document the circumstances of the alleged incident," further suggesting its purpose was to comply with the policy and regulation for tracking of incidents rather than to further retrospective review. Indeed, the Incident Report was generated on the same date as Jones' fall.

In sum, it is apparent that the Incident Report was generated pursuant to BHP's policy in accordance with its external obligation under 902 KAR 20:016 to track incidents at its facility. As such, because the Incident Report was developed pursuant to an external obligation rather than as part of BHP's patient safety evaluation system, the Court of Appeals correctly affirmed the

---

[5] BHP argues that falls are not the types of "incidents" contemplated by 902 KAR 20:016 Section 3(4)(g), given the regulation's language requiring procedures for "tracking incidents, *including transfusion reactions, drug reactions, and medication error*s." (Emphasis added). BHP contends falls are not the same types of incidents as the specific examples referenced in the regulation, and thus are not within the scope of the regulation. However, the regulation plainly refers to "incidents" more broadly, and then only includes the specific types referenced as examples. We therefore conclude that the regulation applies to incidents more generally, rather than only to incidents similar to the specifically referenced examples. *See Perry*, 626 S.W.3d at 517 ("The participle 'including,' in a legal sense, typically demonstrates the presence of a partial or non-exhaustive list.").

11

trial court's determination that the Incident Report is not protected by the federal patient work safety product privilege.

**II.    The State Peer Review Privilege Does Not Apply To The Incident Report.**

While the Incident Report does not fall within the patient safety work product privilege, we must also consider BHP's separate contention that it nonetheless falls within the scope of Kentucky's peer review privilege. That privilege is set forth in KRS 311.377, which provides in relevant part that "proceedings, records, opinions, conclusions, and recommendations" of covered entities are privileged and neither discoverable or admissible "when the entity is performing . . . retrospective review and evaluation of the competency of professional acts or conduct of other health care personnel." KRS 311.377 (1), (2). As we have previously stated, "[p]ut simply, the statute renders privileged any documents created by an entity engaged in the retrospective review of the professional conduct of health care providers." *Perry*, 626 S.W.3d at 516.

In the present case, Phillips' affidavit endeavors to bring the Incident Report within the scope of peer review privilege by asserting that the document is a "retrospective review and evaluation of the competency of the conduct of other health care personnel." However, a closer examination of the record significantly undercuts that assertion. First, in its privilege log BHP described the document instead as an "internal incident report" that documented "the circumstances of the alleged incident." This strongly suggests that—consistent with its title—the Incident Report merely recites the factual circumstances of the incident, rather than engaging in the type of retrospective review and

12

evaluation to which the peer review privilege would apply. Second, the document was generated **on the same day** as Jones' fall, further suggesting that it sets forth factual circumstances rather than substantive retrospective review and evaluation matters. Finally, Phillips' affidavit asserted that the Incident Report "triggered" the Root Cause Analysis, again suggesting that it merely preceded the retrospective review and evaluation proces, rather than constituting a substantive part of that process. Thus, because the record makes plain that the Incident Report involves an immediate post-event description of relevant facts rather than substantive retrospective review and evaluation, we agree with the Court of Appeals that the trial court did not err in finding that the document does not fall within Kentucky's peer review privilege.

In sum, we agree with the Court of Appeals that the trial court erred in requiring production of the factual portions of the Root Cause Analysis. The PSQIA does not exempt such information from the scope of the patient safety work product privilege, and a writ is appropriate to remedy the trial court's order requiring the production of that privileged information. We likewise agree with the Court of Appeals and the trial court that the Incident Report is not privileged, and thus no writ is warranted as to that document. We therefore affirm the Court of Appeals.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals.

13

Lambert, C.J.; Bisig, Conley, Goodwine, Keller, Thompson, JJ., sitting.

Lambert, C.J.; Bisig, Conley, Goodwine, Keller, JJ., concur. Thompson, J., concurs in result only. Nickell, J. not sitting.

COUNSEL FOR APPELLANT/CROSS-APPELLEE, BAPTIST HEALTHCARE SYSTEM, INC. D/B/A BAPTIST HEALTH PADUCAH:

Wesley R. Butler
Barnett Benvenuti & Butler PLLC

Ben E. Stewart
Riley & Stewart, P.S.C.

COUNSEL FOR REAL PARTY IN INTEREST/CROSS-APPELLANT, MARIETTA GELANIE JONES:

Gary E, Schaaf
Saladino & Schaaf, PLLC

COUNSEL FOR APPELLEE:

Hon. William Anthony Kitchen